UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CDW LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-00530-SEB-DML |
| | ) | |
| NETECH CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

# Order on NETech's Motion to Compel

This matter came before the court on a motion (Dkt. 174) by defendant NETech Corporation to compel the plaintiffs (hereafter, collectively, "CDW") to produce certain documents. Three categories of documents are at issue:

(1) Documents concerning "mass reassignments" of CDW customers that took place in 2008, and all communications concerning complaints about account reassignments for all customers for which CDW is claiming losses;

(2) Documents relating to CDW's costs of services to the customers for which CDW is seeking damages; and

(3) Documents concerning and relating to a contract between CDW-Government and the federal government.

## Background[1]

Plaintiff CDW and defendant NETech are competitors in the computer hardware industry and sell technology products and business solution services to customers in a wide variety of

---

[1] This background is taken largely from the court's order dated July 7, 2010, granting CDW's motion for preliminary injunction. (Dkt. 96). The court does not intend that this description is a final adjudication or binding on the parties, but provides this general background to give context to the discovery dispute.

industries. This litigation ensued after NETech began soliciting CDW employees, including managers, salespeople, and engineers, to work for NETech. NETech contacted the then-branch manager of CDW's Indianapolis office, who expressed interest in working for NETech and who, while still working for CDW, began recruiting other CDW employees to work for NETech. NETech's goal was to develop a "crushing competitive advantage" in the Indiana marketplace. Some of the CDW employees who left for NETech were John Bannister (the CDW Indianapolis branch manager), Rick Dinkins, Amy Peterson, and Nicole Sawa. The court heard evidence at the preliminary injunction hearing that these employees took CDW documents, via computer downloads or otherwise, while still employed by CDW and then used them in their new jobs with NETech. These employees had non-competition and confidentiality agreements with CDW. CDW accuses NETech of encouraging and facilitating the employees' breaches of their non-competition and confidentiality agreements. CDW's lawsuit against NETech asserts claims for tortious interference with contractual and business relationships, misappropriation of trade secrets, unfair competition, and conspiracy to breach fiduciary duties. In addition to final injunctive relief, CDW seeks damages against NETech measured (at least in part) with reference to profits CDW would have earned on business for customers who were wrongfully solicited by NETech.

## General Discovery Principle

Rule 26 of the Federal Rules of Civil Procedure allows parties to obtain discovery of any "nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Though the scope of discovery is broad, the court must limit discovery otherwise allowed where (1) it is unreasonably cumulative or duplicative or can be obtained from a source that is less burdensome or expensive; (2) there already has been ample opportunity to obtain the requested

discovery; or (3) the burden or expense to comply with the requested discovery outweighs its likely benefit "considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

**Mass Reassignments Documents**

The parties have reached an agreement regarding CDW's obligations in responding to Second Document Requests 3-8 regarding the reassignments, although they are suspicious whether each understands the agreement the same way. To fulfill its obligations in responding to Requests 3-8, CDW has agreed to search for and produce (1) additional documents reflecting the rationale for its 2008 mass reassignment project and (2) additional documents concerning reassignments of particular accounts and particular account representatives resulting from the 2008 reassignment project and for which CDW is claiming any losses or damages in this case. NETech is concerned that CDW's promise to search for additional documents is not detailed enough to assure NETech that the search will be sufficiently thorough. To implement the parties' agreement, the court orders as follows.

With respect to category (1) above, the court orders CDW to conduct searches of the paper and electronic files, and produce responsive documents located through the search, maintained by or otherwise under the control of persons likely to possess, or to have possessed, documents in category (1). At a minimum, the search and production shall include documents (including electronic files and emails) maintained by CDW decision-makers regarding the 2008 reassignment project and by Christina Rother, Terry Swanson, John Edwardson, and John Bannister. CDW shall provide NETech with a report that states the custodians and files that

were searched. CDW shall conduct searches of additional files for any other custodian who NETech reasonably believes is likely to possess responsive documents.

With respect to category (2) above, the court orders CDW to conduct searches of paper and electronic files, and produce responsive documents located through the search, reasonably likely to reveal or relate to complaints about account reassignments for all of the customers for which CDW is claiming losses in this case. CDW shall provide NETech with a report that states the custodians and files that were searched. CDW shall conduct searches of additional files for any other custodian who NETech reasonably believes is likely to possess responsive documents.

CDW shall conduct the searches, produce the responsive documents, and provide the reports of their searches within 21 days of the entry of this order.

## **Cost of Services Documents**

NETech's Third Document Request 3 seeks cost information for products and services identified in CDW's quotes to certain customers:

> Request No. 3. Any and all documents establishing or evidencing the cost to Plaintiffs or to CDW-Government LLC for the products and/or services identified in quotes generated by any of the Plaintiffs or by CDW-Government LLC and provided to any of the customers listed in Plaintiffs' Preliminary Injunction Exs. 70 or 71 since March 1, 2010.

The customers referenced in Third Document Request 3 are ones for which CDW intends to seek damages, and the request is designed to uncover information by which NETech may test CDW's alleged lost profits. NETech also argues that the information is relevant to its counterclaims against CDW. CDW does not challenge the relevance of the requested discovery, and has agreed to provide the cost information for its goods (or products). CDW has also agreed to provide some information regarding its costs of services, but contends that it is "impossible" for it to calculate cost of services except on a project-by-project basis and only after the project

has been completed.  CDW has offered to produce "service margin information on a project-by-project basis for 2008 through 2010," and believes this offer should moot NETech's motion to compel.  (CDW response to motion to compel, Dkt. 180, at p. 12).

NETech contends that CDW's proposal allows CDW to cherry-pick information and denies NETech the ability to test CDW's damages claims.  NETech maintains that CDW's offer to provide NETech with its service margin calculations for projects is helpful, but that it also needs the underlying documentation of CDW's costs that would permit NETech to make the calculations for itself.  (*See* NETech reply brief, Dkt. 181, at pp. 9 -10).

The court agrees with NETech that it is entitled to more than CDW's "margin information" for services quoted to the subject customers.  First, it is not clear what CDW means by "service margin information on a project-by-project basis for 2008-2010."  For example, the court cannot ascertain whether CDW is referring to actual margins on different projects actually completed for the subject customers, or whether it refers to a summary of projected or assumed margins on projects quoted but not awarded to CDW.  Second, in either event, NETech is entitled to discover the documents that "establish[ ] or evidence[ ]" the calculations of cost (or projected cost) of the quotes referenced in its request.  That conclusion flows not only from Fed. R. Civ. P. 26, but also, in all likelihood, from Fed. R. Evid. 1006.[2]  Third, CDW's contention that it is impossible to calculate "costs" on a service project until after the project is completed is based on a mischaracterization of NETech's request.  CDW apparently reads the request to refer to costs CDW actually incurred on a project, which of course would be impossible in the context

---

[2]  As the court apprehends CDW's damages theory, CDW will try to prove that it lost profits when, because of NETech's alleged wrongful conduct, it was not awarded certain projects it had quoted to customers.  To the extent CDW will establish what its net profits on those projects would have been through the use of summaries showing its "service margins" on the projects, Rule 1006 would require it to have made the documents underlying its summaries available to NETech.

of quotes on jobs CDW was never awarded. But NETech's request encompasses the costs CDW assumed for purposes of preparing the quotes. Presumably, CDW did not take stabs in the dark about its costs in providing the services it was quoting. If it has documents that reflect its assumptions, projections, or calculation of costs underlying those quotes, it must produce them. CDW has not given the court any basis for concluding that it does not possess responsive documents or any reason recognized under Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) for limiting its obligation to produce them.

Because NETech's request for cost of services documents for the services quoted to the referenced customers seeks relevant evidence and because CDW has not demonstrated that it is too burdensome to provide the documents, the court grants NETech's motion to compel as to Third Document Request 3. CDW is ordered to produce, within 21 days of the entry of this order, its documents "establishing or evidencing" its costs for services as requested.[3]

## **CDW-Government Documents**

The CDW-Government documents requested by NETech are relevant, if at all, to a potential unclean hands defense by NETech to CDW's request for permanent injunctive relief. NETech's Second Document Requests 9-12 are:

> Request No. 9. Any and all documents created after January 1, 2009, and generated by, received by, or copied to Christina Rother concerning, relating to or discussing audits by the General Services Administration ("GSA") or the concern that the GSA might conduct an audit of one or more of the Plaintiffs.

> Request No. 10. The Schedule 70 GSA Federal Supply Service Contract Number GS-35F-0195J ("the 0195J Contract") with CDW-Government, Inc. ("CDW-G"), 230 N. Milwaukee Ave., Vernon Hills, IL 60061-1577. This request includes all Sections, Attachments, Modifications, Statements of Work and other parts to the

---

[3] The court does not know the volume of documents responsive to Third Document Request 3 and has no information allowing it to predict the reasonable time necessary for CDW to produce the responsive documents. If CDW needs more time to comply fully with Third Document Request 3, the court will be amenable to allowing more time for good cause shown.

> 0195J Contract. This request does not include records comprising orders placed against the 0195J Contract.
>
> Request No. 11. The proposals/offers submitted by CDW-G leading to the 0195J Contract, including specifically the Commercial Sales Practices (CSP-1.)
>
> Request No. 12. The proposals/offers submitted by CDW-G relating to the extension, renewal, or replacement of the 0195J Contract, where that contract is to end on July 15, 2010, including all CSP-1Formats and related information submitted to GSA.

Based primarily on the facts of a Seventh Circuit decision, NETech seeks to pursue a theory that the employees who left CDW (or whom NETech lured away from CDW) did so because they believed CDW was engaged in unlawful business practices through allegedly charging the federal government more money than CDW charged non-government customers for comparable work—in essence, that CDW gouged the government unlawfully or unfairly.

In *Mantek Div. of NCH Corp. v. Share Corp.*, 780 F.2d 702 (7th Cir. 1986), employees were lured from one company to its competitor, allegedly in violation of their non-competition agreements. The former employer sued the new one and the former employees and was granted a preliminary injunction forbidding the employees from soliciting customers within the territories the employees had served for their former employer. The defendants challenged the district court's grant of the preliminary injunction, in part on the ground that the court refused to consider evidence giving rise to a "colorable" defense to the enforcement of the employees' non-competition agreements. The defendants sought to introduce at the preliminary injunction hearing evidence that the former employer had been engaged in unlawful commercial bribery that tainted the employees' non-competition agreements. The Seventh Circuit ruled that the district court erred in refusing to consider the evidence because the commercial bribery defense was colorable and, if established, could have influenced "the court's decision as to [the

plaintiff's] 'clean hands' and thus [the plaintiff's] reasonable likelihood of success on the merits." *Id.* at 706.

The defendants tied the former employer's alleged commercial bribery to the employees' non-competition agreements by arguing that the bribery scheme was as much a part of the employees' agreements as any other term of their employment because they were required to engage in the bribery practices (and use their sales commissions to pay the bribes) to keep their jobs. *Id.* at 708 ("We find this bribery . . . to be so much a part of the sales contract that [the employer] seeks to enforce that all of the defendants have a sufficient nexus to raise the commercial-bribery defense"). The bribery scheme also was allegedly "essential" to all of the former employer's business practices because its products were more expensive than all competitors' products and the only reason customers would buy from the former employer was if its salespeople paid adequate bribes to the customers' agents for purchasing from the employer. *Id.* at 706. These close ties between the "colorable" defense theory and the validity of the non-competition agreements themselves were critical to the court's decision that the district court should have allowed the defendants to present evidence to support the theory. *See id.* at 707-08. It would not have been enough, however, to argue, for example, that the employer was a tax cheat because the nexus would be missing between the employer's behavior and the validity of the restrictive covenants. *Id.* at 707 n.7.

NETech's attempt to fit within the *Mantek* analysis and to establish the possibility of a nexus between CDW-Government's alleged fraudulent behavior toward the government (for which NETech offers only speculation) and the non-competition agreements at issue in this case falls flat. NETech maintains that the required nexus lies in the fact the old CDW employees left CDW because they were no longer allowed to serve (and presumably potentially to gain from)

8

CDW's government accounts. (*See* NETech's reply brief, Dkt. 181, at p. 4: "To be clear, NETech contends that employees who are at issue in this case left Plaintiffs' employ because their accounts were taken away in furtherance of Plaintiffs' improper purpose of deceiving the government by siloing accounts [into CDW-Government in order to charge more money to the government]"). NETech has not posited any theory to tie the CDW employees' employment contracts themselves to CDW's alleged abuse of its separate contractual relationship with the government. NETech's nexus theory is akin to the "I quit because my employer is a tax cheat" that was rejected by the *Mantek* court. The nexus required by *Mantek* is between the employment contract and the employer's unlawful behavior—akin to a contractual illegality defense. *See* 780 F.2d at 708 (defendants sought to prove that "the Mantek covenants not to compete were part of a pervasive scheme of commercial bribery"). The employees in *Mantek* claimed that the contracts their former employer was trying to enforce against them were illegally dependent upon the employees' participation in commercial bribery. The *Mantek* court stressed:

> [The defendants' offer of proof] indicates that Mantek's scheme of alleged commercial bribery so permeates Mantek's sales practices that all of Mantek's salesmen were required to participate in the scheme. A restrictive covenant substantially limiting a salesman's opportunities to continue practicing his trade after leaving Mantek certainly gave Mantek leverage in its alleged attempts to coerce unwilling salesmen to adopt its practice of bribing purchasing agents. We find this bribery . . . *to be so much a part of the sales contract that Mantek seeks to enforce* that all of the defendants have a sufficient nexus to raise the commercial-bribery defense.

780 F.2d at 708 (emphasis added).

Moreover, NETech's nexus theory differs from that in *Mantek* in another fundamental way. In *Mantek,* the defendants maintained that they were required to participate in allegedly unlawful conduct to keep their jobs. In this case, the former employees of CDW state that CDW

9

did not allow them to service the government contracts that allegedly were part of CDW's wrongful behavior. Thus, the alleged wrongful conduct here could not be viewed as a term of employment as it was in *Mantek*.

Because NETech's theory is not one that ties the validity of the non-compete agreements to CDW's alleged abuse of its contractual relationship with the government and there is no other basis on which NETech claims that the CDW-Government documents are relevant to this case, the court finds that the burden on CDW to respond to NETech's Second Document Requests 9-12 outweighs any possible benefit to permitting that discovery.

## **Conclusion**

For the foregoing reasons, NETech's motion to compel (Dkt. 174) is GRANTED in part and DENIED in part. Plaintiffs shall produce the non-privileged documents ordered to be produced herein within 21 days of the date of this order.

So ORDERED.

Dated: 05/05/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Craig T Boggs  
PERKINS COIE, LLP  
cboggs@perkinscoie.com

Michael R. Brunelle  
BARNES & THORNBURG LLP  
mbrunelle@btlaw.com

David A. Given  
BAKER & DANIELS  
dagiven@bakerd.com

Donald E. Knebel  
BARNES & THORNBURG LLP  
donald.knebel@btlaw.com

Dwight D. Lueck  
BARNES & THORNBURG  
dwight.lueck@btlaw.com

Laurence John Oleksa  
PERKINS COIE, LLP  
loleksa@perkinscoie.com

Jennifer Lynn Schuster  
BARNES & THORNBURG LLP  
jschuster@btlaw.com

Aaron M. Staser  
BARNES & THORNBURG LLP  
aaron.staser@btlaw.com

Eric E Walker  
PERKINS COIE, LLP  
ewalker@perkinscoie.com

Christopher B Wilson  
PERKINS COIE LLP  
cwilson@perkinscoie.com