# Exhibit 5

# EMPLOYMENT AGREEMENT

THIS AGREEMENT, made as of the 5 day of FEBRUARY, 2004, by and between **Berbee Information Networks Corporation**, a Delaware corporation ("Berbee"), and **Dan Ryan** ("Employee").

## BACKGROUND

A. Berbee is an international provider of sophisticated e-business solutions, including the design, marketing, sales, development, hosting and maintenance of Internet websites, particularly those with an electronic commerce component, and also offers a wide range of general technology development, consulting application service provisioning and networking services, including equipment resale to its customers. Berbee's headquarters are located in Madison, Wisconsin, but the extent of its operations is growing each quarter, and that its business reach is both national and international. As a result, Berbee seeks to identify, hire and retain the most qualified individuals to become employees, without regard to race, religion, color, age, gender, marital status, sexual orientation, disability, national origin or other protected status.

B. Employee understands that by accepting employment with Berbee he or she will join part of a growing organization, will support Berbee and its goals, and willingly accepts the benefits and limitations that are contained in this Agreement.

C. Employee acknowledges that in connection with his or her employment, Employee will be given access to, generate and otherwise come in contact with Confidential Business Information of Berbee and customers of Berbee. Employee understands that the improper disclosure or use of the Confidential Business Information could be highly detrimental and damaging to Berbee and/or its customers.

D. Berbee has offered Employee employment for compensation and other benefits set forth in this Agreement, and Employee is willing to accept employment on such terms.

## AGREEMENT

THEREFORE, Employee and Berbee agree as follows:

1. **Employment; Duties.** Berbee will employ Employee as an "Account Manager". Employee will have responsibility for achieving maximum sales profitability and growth in assigned territory by effectively selling the company's products and related services. While employed by Berbee, Employee will devote his or her best efforts and such time, skill, labor and attention as is necessary to advance the interests of Berbee and will not engage in or be concerned with any other commercial duties or pursuits which would detract from his or her ability to perform his or her employment duties on a full-time, best-efforts basis.

2. **Term.** Berbee and Employee anticipate a mutually beneficial relationship that may continue indefinitely, but explicitly recognize that Employee is employed on an "at will" basis. This Agreement may be terminated, with or without cause, by either party upon the giving of written notice to the non-terminating party. It is expected that a reasonable period of notice under the relevant circumstances will be provided.

3. **Compensation; Fringe Benefits/Reimbursement.** During the term of this Agreement, Berbee shall provide Employee with the following:

   a. **Base Salary.** Berbee will pay Employee a starting base annual salary of $60,000, subject to review and adjustment upon a periodic basis by Berbee.

   b. **Sales Commission Plan.** You will be eligible for the commission schedule attached to your employment agreement.

   c. **Draw.** You will be guaranteed a $4,000 per month draw against commissions for the first 6 (six) months of your employment. Terms of draw are further defined in the compensation plan attached to your employment agreement.

   d. **Fringe Benefits.** The Employee will be entitled to participate in all fringe benefit programs offered by Berbee to its employees, including various kinds of insurance, retirement plans and paid vacation, as further described in the Berbee welfare and benefit plans and the employee personnel manual. Employee shall be entitled at their hire date to (15) Fifteen days paid vacation annually prorated for any partial calendar year and part time employment. Any vacation unused in any calendar year shall not carryover to any subsequent year. Employee shall notify Corporation at least ten (10) days prior to any scheduled vacation.

   e. **Equipment.** Berbee will provide Employee with such supplies, materials and equipment as Berbee considers appropriate to assist Employee with carrying out his or her duties. All such supplies, materials and equipment will remain the sole and exclusive property of Berbee and upon the termination of this Agreement, for whatever reason, shall be promptly returned by Employee to Berbee.

4. **Confidential Business Information and Nondisclosure.** It is understood that Employee has and will acquire and be informed of Confidential Business Information during his or her employment with Berbee. "Confidential Business Information" means all information of any kind relating to the business, operation and administration of Berbee, including, but not necessarily limited to, trade



-2-

secrets, customer/client lists, financial information, policy or procedure manuals, computer software and systems, training programs and related materials, marketing materials and information, research results, information regarding corporate opportunities, the identity of clients or their business requirements, the identity of key contacts within the clients' organizations, and discoveries, inventions, ideas, concepts or product improvements, or compilations of any of the foregoing, or similar information provided to Berbee by customers of Berbee.

Employee acknowledges and agrees that (i) the Confidential Business Information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) the Confidential Business Information is, and has been, subject to efforts by Berbee to maintain its secrecy that are reasonable under the circumstances. Confidential Business Information does not include information concerning Berbee and its business which is widely disclosed to the public in published form, nor does it include generally available information concerning principles of business operations.

Employee shall not disclose to others or use, both during his or her employment with Berbee or for a period of eighteen (18) months thereafter, except in the furtherance of the business of Berbee, any Confidential Business Information; provided, however, that Employee shall not disclose to others or use at any time after termination of his or her employment any Confidential Business Information that constitutes a trade secret under Section 134.90, Wis. Stats. (the "Trade Secrets Act"), as amended.

5. **Duties to Prior Employers.** Berbee does not request, nor would it allow employee to disclose trade secrets or appropriately protected intellectual property of the Employee's former employer, and Employee agrees not to provide Berbee with any such trade secrets or intellectual property owned by any previous employer of Employee.

6. **Removal of Materials.** In any event, and regardless of whether Confidential Business Information is involved, Employee will not remove from the premises of Berbee, except in the pursuit of business of Berbee, any contracts, sales invoices, purchase orders, pricing information, technical information, component, device, record, computer program, tape or other document pertaining to the business of Berbee, whether developed by Employee or by someone else unless required in the course of employment or association with Berbee.

7. **Delivery of Materials to Berbee.** Immediately upon termination of his or her employment with Berbee, Employee will return to the principal office of Berbee all written, recorded and graphical materials, documents and items (and copies thereof) in his or her possession or under his or her control and related to the



business of Berbee, regardless of whether such materials, documents and items contain Confidential Business Information.

8. **Covenant Not To Compete.** As a result of Employee's experience in the business of Berbee, the training given to Employee by Berbee the substantial investment Berbee has made in time, effort and expense to develop products and services, establish customer relationships, and the fact that he or she will have access to Confidential Business Information (as defined above) relating to Berbee while in the employ of Berbee, the parties acknowledge and agree that if Employee competed with Berbee, either directly or indirectly, such competition would have a significant negative impact on Berbee's business and financial condition. Accordingly, Employee agrees that while employed by Berbee and for a period of equal to his or her length of employment, but not greater than twelve (12) months from the termination of this Agreement for whatever reason, he or she shall not directly or indirectly, whether as an owner, stockholder, partner, employee, consultant, agent, independent contractor or otherwise, for himself or herself, or on behalf of any other person or entity, engaged directly or indirectly, or enter into any aspect of the business of Berbee (as such business activities exist as of the date of his or her termination of employment).

The forms of competition prohibited by this paragraph shall include, but not be limited to, the following activities to the extent that any of them are competitive with the business of Berbee: (a) soliciting or assisting in the solicitation of customers of Berbee; (b) supplying goods or rendering services or assisting in such activities, to customers of Berbee; (c) diverting or attempting to divert any customer's business from Berbee or otherwise interfering with the business relationships between Berbee and its customers; (d) planning for or the organization of any business activity competitive with Berbee's business; (e) combination or conspiration with other employees of Berbee for the purpose of acquisition of any such competitive business activity; (f) actively soliciting for hire any employee of Berbee; or (g) use or dissemination of Confidential Business Information, except in furtherance of the business interests of Berbee (subject to the provisions of paragraph 4 hereof).

The foregoing prohibition shall not be interpreted to prevent or limit the right of Employee to invest in the capital stock or other securities of any corporation whose stock or other securities are publicly owned and are regularly traded on any public securities exchange, so long as such interest does not exceed 3% of the equity of such company.

This covenant not to compete shall be enforceable with regard to any competitor with substantial business operations in the United States and with regard to any customer with whom the Employee has had direct contact during the twelve (12) months preceding termination, or any substantial customer of Berbee which exists at the time of the termination. Berbee may provide a list of such competitors and



-4-

customers to Employee within seven (7) days of the termination date, but such non-competition restrictions shall not be solely restricted to such listed competitors or customers, but such restrictions shall be reasonably enforced to protect the interest of Berbee.

Employee agrees that the covenants above are reasonably and properly necessary to adequately protect the legitimate business interests of Berbee, and that such restrictions will not prevent Employee from securing gainful employment using Employee's education, experience and know how in a non-competitive enterprise or activity. In the event that any one or more of such time or other limitations is found to be unreasonable by a court of competent jurisdiction, Employee agrees and submits to the reduction of said time and other limitation to such an area, scope period or otherwise as the court may determine to be reasonable. In the event that any limitation in this Agreement is found to be unreasonable or otherwise invalid in any jurisdiction, in whole or in part, Employee hereby acknowledges, warrants and agrees that such limitation shall remain and be valid in all other jurisdictions.

9. **Injunctive Relief.** Employee acknowledges that damages for the breach of this Agreement related to disclosure of Confidential Business Information or improper competition will be inadequate and will not give full and sufficient relief to Berbee, and that a breach of any provision of this Agreement will constitute irreparable harm to Berbee. Therefore, Employee agrees that in the event of his or her breach of this Agreement, Berbee shall be entitled to both injunctive relief against the continued violation thereof and compensatory damages.

10. **Absence of Conflicts.** Employee represents that there is no agreement with any other party which would conflict with his or her duties or obligations under this Agreement.

11. **Auto Insurance.** Employee agrees to acquire and maintain liability insurance covering Employee when Employee's personal vehicle is used for work-related travel. Work-related travel includes, but is not limited to, commuting to and from client sites.

12. **Inventions.** Employee shall disclose promptly to Berbee any and all significant conceptions and ideas for inventions, improvements and valuable discoveries, whether patentable or not, which are conceived or made by Employee, solely or jointly with another, during the period of Employee's employment or within one (1) year thereafter, and which are directly related to the business or activities of Berbee or which Employee conceives as a result of Employee's employment by Berbee. Employee hereby assigns and agrees to assign all Employee's interests therein to Berbee or its nominee. Whenever requested to do so by Berbee, shall deem necessary to apply for and obtain Letters of Patent of the United States or any foreign country or to otherwise protect Berbee's interest therein.

13. **Miscellaneous**.

   a. **Successors.** This Agreement shall be binding upon not only the parties, but their respective successors, assigns, heirs, legal representatives, executors and administrators, except that Employee may not assign or transfer any obligations or rights under this Agreement without the written consent of an officer of Berbee.

   b. **Modification, Amendment or Waiver.** No modification, amendment or waiver of any provision of this Agreement shall be effective unless approved in writing by both parties. The failure of either party at any time to enforce any of the provisions of this Agreement shall in no way be construed as a waiver of any such provisions and shall not effect the right of either party thereafter to enforce each and every provision thereof in accordance with its terms.

   c. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. If any provision of this Agreement shall be held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remaining provisions of this Agreement.

   d. **No Strict Construction.** The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict construction shall apply against either party.

   e. **Governing Law; Venue.** All questions concerning the construction, validity and interpretation of this Agreement shall be governed by the laws of the State of Wisconsin. The venue for any legal proceedings concerning this Agreement shall be Dane County Circuit Court, Madison, Wisconsin.

   f. **Survival.** The provisions and covenants of paragraphs 4, 7, and 8 shall survive the termination of this agreement.

   g. **Consultation with Attorney.** Employee acknowledges that prior to signing this Agreement, Employee had the opportunity to consult with an

attorney of his choice concerning the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first indicated above.

**BERBEE INFORMATION NETWORKS CORPORATION**

By: _____
Diane C. Rivers, People Department Director

By: ___Daniel H. Ryan___  2/5/2004
Dan Ryan, individually

-7-