UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CDW LLC, CDW DIRECT LLC, and BERBEE INFORMATION NETWORKS CORPORATION, <br>       Plaintiffs, <br><br> vs. <br><br> NETECH CORPORATION, <br>       Defendant. | ) ) ) ) ) ) ) ) ) ) ) | 1:10-cv-0530-SEB-DML |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

This cause is before the Court on a motion filed by Plaintiffs CDW LLC, CDW Direct LLC, and Berbee Information Networks Corporation (collectively, "CDW") to dismiss the counterclaims filed by Defendant NETech Corporation pursuant to Fed. R. Civ. P. 12(b)(6). [Docket No. 140]. NETech opposes CDW's request. For the reasons detailed herein, CDW's motion is <u>GRANTED IN PART AND DENIED IN PART</u>.

**Factual Background**

NETech is a corporation that provides technology related services to businesses in direct competition with CDW. NETech Counterclaim at ¶ 8, Docket No. 135. In early 2010, NETech became aware that Rick Dinkins and Ann Garcia, employees of CDW-affiliated companies at that time, were interested in employment with NETech and, thus, NETech began contacting those and other CDW-affiliated employees about such employment opportunities. <u>Id.</u> ¶¶ 10-11; NETech Answer ¶ 11, 12. Many of the CDW

employees contacted by NETech, including Dinkins and Garcia, had signed agreements with CDW or one of its companies that included covenants not to compete. NETech Counterclaim at ¶ 13.

When CDW learned that certain of its employees had been lured away by NETech and/or were considering leaving CDW for employment at NETech, CDW allegedly engaged in a "campaign of harassment and intimidation" in an effort to prevent their departures. Id. ¶ 15. This "campaign" included letters from CDW's counsel sent to their former employees following their resignations demanding that they abide by the terms of their covenants not to compete pursuant to their agreements with CDW. Id. ¶ 16. At least one of these letters asserted that employment by NETech violated the terms of the employee's covenant not to compete. Id. ¶ 17. CDW also filed various lawsuits against NETech and its former employees, seeking to enforce the covenants not to compete. Id. ¶¶ 18-20. Finally, CDW decreased the prices of its goods and services to amounts "below the cost of those goods and services . . . for the sole purpose of causing economic injury to NETech." Id. ¶¶ 25-26. These actions are alleged by NETech to have caused it "great damage and expense." Id. ¶ 22.

NETech contends that these covenants not to compete are unenforceable, a view endorsed by a Wisconsin trial court, at least with regard to one of the covenants not to compete at issue. See: CDW Direct, LLC et al. v. Peterson, et al., Case No. 2010-CV-2144 (Wis. Cir. Ct. Nov. 8, 2010). A similar covenant is in dispute here.

In response to the lawsuit filed by CDW against NETech in this Court, which

specifically includes allegations of tortious interference with contractual and business relationships and employment, misappropriation of trade secrets, conspiracy to breach fiduciary duty, and common law unfair competition, NETech has filed counterclaims for tortious interference with business relationships, common law unfair competition, and abuse of process. It is these counterclaims which CDW now seeks to have dismissed.

**Legal Analysis**

**I.     Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). Id. "[A]t some point, the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."[1] Killingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 619

---

[1] Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a). Under Seventh Circuit law, the statement must be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Hillingsworth v. HSBC Bank Nevada, N.A., 507 F.3d 614, 618 (7th Cir. 2007) (internal citations omitted).

(7th Cir. 2007) (quoting Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007)) (internal quotations omitted)).

A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563 (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

**II.　Discussion**

CDW argues that NETech's Counterclaim fails to state a claim for which relief may be granted with regard to all three of the counts NETech has advanced – tortious interference with business relations, unfair competition, and abuse of process. We discuss the merits CDW's arguments relative to each of these counts below.

**A.　Tortious Interference with Business Relations and Unfair Competition Claims**

The parties agree that the elements of a tortious interference with business relations claim include: "(1) the existence of a valid relationship; (2) the defendants'

4

knowledge of the existence of the relationship; (3) the defendants' intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from the defendants' wrongful interference with the relationship." Lauer v. Patriot Paint Co., 2007 U.S. Dist. LEXIS 51860, at *13 (N.D. Ind. July 17, 2007)(citing AutoXchange.com, Inc., et al. v. Dreyer & Reinbold, Inc., 816 N.E.2d 40 (Ind.Ct.App.2004)). Additionally, the Indiana Supreme Court has expressly held "this tort requires some independent illegal action." Brazauskas v. Fort Wayne-South Bend Diocese, Inc., 796 N.E.2d 286, 291 (Ind. 2003), *cert. denied*, 541 U.S. 902 (2004).

CDW maintains that NETech's Counterclaim fails to sufficiently allege that any "interference" on the part of CDW was unjustified and/or illegal, both of which (as noted above) are essential elements of NETech's tortious interference claim. NETech rejoins that Paragraph 32 of its Counterclaim as well as the allegations regarding CDW's acts with the specific purpose of harming NETech's business sufficiently plead a lack of justification for and the illegality of CDW's actions.

As an initial matter, we reject entirely NETech's argument that Paragraph 32 of the Counterclaim, in and of itself, sufficiently alleges that CDW acted without justification or illegally. Paragraph 32 states, "[w]ithout justification, Plaintiffs intentionally, wrongfully and illegally interfered with NETech's valuable business relationships with its customers." This is nothing more than a generalized, non-specific, unsubstantiated, unexplained assertion mirroring presumably the legal element of such a claim, but bereft of any factual underpinnings. As noted by CDW, the Supreme Court has

made clear in Twombly that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Clearly, an allegation that CDW acted "without justification" or "illegally" and nothing more is precisely the type of formulaic recitation that the Supreme Court held to be insufficient.

NETech also directs this Court's attention to Paragraphs 15-21 and 25-27 of its Counterclaim, arguing that these allegations, taken as true, establish that CDW engaged in illegal acts "with the specific purpose of harming and/or destroying NETech's business" and to prevent fair competition. Resp. at 3. These paragraphs incorporate two means by which NETech claims CDW tortiously interfered with its business: CDW's reductions of prices of goods and services offered to customers and prospective customers of NETech to levels below the costs of those good and services and CDW's various attempts to enforce covenants not to compete that at least according to NETech are unenforceable. We discuss these two alternative theories of tortious interference below.

Paragraphs 25-27 of NETech's Counterclaim allege that CDW "intentionally cut the price of goods and services offered to customers and prospective customers of NETech to below the cost of those goods and services" and did so with the sole purpose of causing harm to NETech's business and preventing fair competition. NETech Counterclaim ¶¶ 25-27. "Under Indiana law, the "absence of justification" element is affirmatively 'established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and

6

damage of another.'" Chem-A-Co., Inc. v. Earth Sci. Labs., Inc., 2006 U.S. Dist. LEXIS 66798, at *8 (N.D. Ind., Sept. 18, 2006) (quoting Bilimoria Computer Sys., LLC v. America Online, Inc., 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005)). Despite any possible proof problems NETech may face in the future, for now NETech is entitled to "the benefit of imagination." NETech has pled that CDW's "price cutting was for the *sole* purpose of causing economic injury to NETech." (emphasis added). That suffices to state a claim against CDW that it acted without justification.

CDW also argues that NETech's tortious interference claim fails because NETech's Counterclaim contains no allegations that CDW engaged in illegal conduct. Mem. at 4-5. NETech maintains, however, that its allegations regarding CDW's "below-cost pricing" constitute unfair competition on the part of CDW and that as such CDW's actions were sufficiently illegal to support NETech's tortious interference claim.[2]

The Indiana Court of Appeals has discussed predatory price cutting, which it characterized as a type of unfair competition, in Bartholomew County Beverage Co. Inc. v. Barco Beverage Co., 524 N.E.2d 353, 358-359 (Ind. App. 1 Dist. 1988). The Court explained that, "[w]ith regard to price cutting, although price cutting generally is considered a fair and welcomed part of vibrant competition, if prices are cut for the primary purpose of destroying a competing business then the price cutting is considered

---

[2]CDW also asks that the Court dismiss NETech's unfair competition claim (Count II). Although the parties' briefs address the viability of this Count separately, we have combined our discussion of NETech's tortious interference and unfair competition claims because, as discussed below, the legal elements of each cause of action overlap.

7

unfair competition." Id. at 358. Relying on the United States Supreme Court's discussion of predatory pricing under federal antitrust laws, the Barco Court stated:

> Predatory pricing may be defined as pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run. It is a practice that harms both competitors and competition. In contrast to price cutting aimed simply at increasing market share, predatory pricing has as its aim the elimination of competition. Predatory pricing is thus a practice 'inimical to the purposes of [the antitrust] laws,' and one capable of inflicting antitrust injury.

Id. at 358-59 (quoting Cargill, Inc. v. Monfort of Colorado, Inc., 479 U.S. 104, 117 (1986)). More recently, the Indiana Court of Appeals described predatory pricing as "pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run—by cutting prices below marginal cost with the intent to put the plaintiff out of business." Think Tank Software Dev. Corp. v. Chester, Inc., 2011 Ind. App. Unpub. LEXIS 449, at *42 (Ind. Ct. App. Apr. 11, 2011). In fact, we have, ourselves, discussed unfair competition under Indiana law in this very litigation when granting CDW's preliminary injunction. See Docket No. 96. There, we explained that *CDW* had a likelihood of success on the merits of *its* unfair competition claim because CDW's allegations and the supporting evidence clearly had the potential to demonstrate that NETech's primary purpose was to destroy CDW's business. Id. The teaching of these cases is that, under Indiana law, a claim for predatory price cutting as a type of unfair competition is entirely dependent upon the claimant's

8

ability to prove that specific motivation and purpose on the part of the alleged tortfeasor.[3] Because, as noted above, NETech has alleged that CDW's "price cutting was for the *sole* purpose of causing economic injury to NETech," (emphasis added) NETech has sufficiently alleged the predicate tortious act of unfair competition on the part of CDW.[4]

Having determined that NETech has adequately alleged CDW's tortious unfair competition, the question remains whether acts that constitute unfair competition constitute "illegal action," for purposes of CDW's tortious interference claim. Although the Seventh Circuit has made clear that "illegal" action need not necessarily be "criminal" action for purposes of this tort, Syndicate Sales, Inc. v. Hampshire Paper Corp., 192 F.3d 633, 641 (7th Cir.1999), Indiana courts have not provided significant guidance regarding what actions are sufficiently "illegal" to be actionable. Lauer, 2007 U.S. Dist. LEXIS 51860, at *13-14. The Seventh Circuit has at least implied, however, that action

---

[3]CDW includes the policy argument in its Reply brief that "courts would be clogged with unfair competition disputes" if alleging the purpose of the alleged tortfeasor were sufficient to state an unfair competition claim. Reply at 6. Although we appreciate CDW's concerns regarding a squandering of the Court's time, our role is to apply Indiana law, not to create it. Furthermore, the difficulties inherent in *proving* a primary purpose of competitor destruction, as opposed to bona fide competition, hopefully will discourage baseless cases.

[4]CDW asserts that because NETech merely alleges that CDW engaged in price-cutting for the purpose of "causing economic injury to NETech," as opposed to "for the primary purpose of destroying" NETech, the Counterclaim does not adequately plead unfair competition. We find this attempt to focus on technicalities unconvincing, even after Twombly. See Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010)(quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1215 at 165-173 (3d ed. 2004)("Rule 8 indicates that a basic objective of the rules is to avoid civil cases turning on technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the pleader's claim and a general indication of the type of litigation that is involved. . . . .")

constituting an antitrust claim would be sufficiently illegal for purposes of framing a tortious interference claim. Miles Distribs. v. Specialty Constr. Brands, Inc., 476 F.3d 442, 452-53 (7th Cir. 2007). Furthermore, Judge McKinney of this Court has left open the possibility that filing a lawsuit for allegedly improper purposes could amount to "illegal" conduct sufficient to support a tortious interference claim. Assocs. Fin. Servs. Co. Inc. v. Bowman, Heintz, Boscia & Vivian PC, 2001 U.S. Dist. LEXIS 7874, at *22-23 (S.D. Ind. Apr. 25, 2001)(holding that "it would not be proper to dismiss that claim at this stage of the litigation," because "it is difficult to tell from the limited facts whether [counterclaim Defendant's] alleged conduct was sufficient to be considered 'illegal.'"). In our view, filing a lawsuit for improper purposes is somewhat analogous to unfair competition in that the purpose of the alleged tortfeasor is controlling in each circumstance. Thus, as in Bowman, we decline to dismiss NETech's claim at this early juncture, before the parties have had sufficient opportunity to develop facts illuminating the issue of the legality of CDW's actions.

As noted above, NETech's alternative theory of liability for tortious interference is based upon CDW's attempts to enforce the covenants not to compete. NETech's Counterclaim alleges that CDW's counsel sent letters to former CDW employees demanding that they abide by the terms of their covenants not to compete, implied that the terms of one employee's covenant prohibited employment with NETech in any capacity, and filed several lawsuits to enforce those covenants. As noted above, under Indiana law, the "absence of justification" element is affirmatively 'established only if the

interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another.'" Chem-A-Co., Inc. v. Earth Sci. Labs., Inc., 2006 U.S. Dist. LEXIS 66798, at *8 (N.D. Ind., Sept. 18, 2006) (quoting Bilimoria Computer Sys., LLC v. America Online, Inc., 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005)). Paragraph 43 of NETech's Counterclaim alleges that CDW's pursuit of the pending litigation has been "with the ulterior motive of harming and damaging NETech rather than for legitimate purposes." In light of this allegation, NETech has sufficiently pled that CDW acted "without justification" at this juncture, despite the same difficulties of proof that it may encounter with the first theory of liability discussed above. Furthermore, as previously noted, this Court has previously left open the possibility that filing a lawsuit for allegedly improper purposes could amount to "illegal" conduct sufficient to support a tortious interference claim. Bowman, Heintz, Boscia & Vivian PC, 2001 U.S. Dist. LEXIS 7874, at *22-23. Thus, we find that NETech has adequately stated its claim for tortious interference with business relations under this alternative theory as well.

### B. Abuse of Process

Under Indiana law, "[a]n action for abuse of process requires a finding of misuse or misapplication of process for an end other than that which it was designed to accomplish." Watson v. Auto Advisors, Inc., 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005). To state a claim for abuse of process, a plaintiff must sufficiently allege two elements: (1) that the defendant acted with "ulterior purpose or motives;" and (2) "a

11

willful act in the use of process not proper in the regular conduct of the proceeding." Id. (citing Town of Orland v. Nat. Fire & Cas. Co., 726 N.E.2d 364, 371 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied* 741 N.E.2d 1249 (Ind. 2000)). Clearly, NETech has alleged that CDW initiated the lawsuit against it for an ulterior purpose or motive. Counterclaim ¶ 43 (CDW has "pursued the pending lawsuit with the ulterior motive of harming and damaging NETech rather than for legitimate purposes.") However, the parties dispute whether NETech has sufficiently pled the second element of an abuse of process claim – the improper use of process.

At the core of the parties dispute is an issue that the Indiana Court of Appeals addressed directly in Reichart v. City of New Haven, 674 N.E.2d 27, 31 (Ind. Ct. App. 1996). In that case, the Court acknowledged that language from various state court decisions indicates that allegations of motive alone were sufficient to state an abuse of process claim. See Lindsey v. Jenkins, 574 N.E.2d 324 (Ind. Cr. App. 1991); Archem, Inc. v. Simo, 549 N.E.2d 1054 (Ind. Ct. App. 1990); Display Fixtures Co., a Div. of Stein Indus., Inc. v. R.L. Hatcher, Inc., 438 N.E.2d 26 (Ind. Ct. App. 1982); Barrow v. Weddle Bros. Constr., 161 Ind. App. 601, 316 N.E.2d 845, (1974). The Reichart Court held expressly, however, that "the prevailing view is that an abuse of process claim requires proof of *both* elements, including the improper-process element." (emphasis in original). 674 N.E.2d at 31. "[A] party must first establish that the defendant employed improper 'process' before the court proceeds to an examination of the defendant's motivation." Id. Thus, "[a] party's intent is irrelevant where his acts are procedurally and substantively

proper under the circumstances." Id. (quoting Comfax Corp. v. North American Van Lines, Inc., 638 N.E.2d 476, 485 (Ind. Ct. App.1994)).

NETech maintains that it has "specifically alleged that [CDW's] conduct was *not* proper under the circumstances," meaning that the Court should move on to consider CDW's intent. Resp. at 11. In this vein, NETech asks that we consider its allegation that "[CDW] filed their Amended Complaint not to enforce the non-competes of Garcia or Dinkins but to harass, intimidate, and prevent other employees from moving to NETech." Id. Our considered opinion after reviewing the allegations in NETech's Counterclaim is that none of them relates to the propriety of CDW's use of the judicial process, as distinct from those relating to CDW's alleged ulterior motive. Cf. Barai v. Indian Nat'l Overseas Cong. USA Inc., 2010 U.S. Dist. LEXIS 95831, at *17-20 (N.D. Ind. Sept. 13, 2010)(rejecting a claimant's argument that alleging that a lawsuit used for the purpose of harassment, as opposed to redressing legal wrongs, sufficiently stated abuse of process claim); Biomet, Inc. v. Smith, 238 F. Supp. 2d 1036, 1048-49 (N.D. Ind. Dec. 23, 2002) (rejecting as a sufficient basis for an abuse of process claim allegations that defendant filed a petition for a protective order to prevent claimant from attending a shareholder meeting for the purpose of damaging his reputation). In other words, the only "improper" action by CDW as gleaned from NETech's Counterclaim is CDW's intent or purpose in instituting the proceedings.[5] Thus, we find that NETech has failed to allege that CDW

---

[5]NETech also asserts that the covenants not to compete are "unenforceable." However,
(continued...)

13

committed "a willful act in the use of process not proper in the regular conduct of the proceeding" and failed to state a claim for abuse of process.

## Conclusion

For the reasons detailed herein, we hold that NETech has sufficiently alleged tortious interference and unfair competition claims but has failed to state a claim for abuse of process. Thus, Plaintiff CDW's Motion to Dismiss Defendant NETech's Counterclaim is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Date:_____08/26/2011_____                  _____
                                                SARAH EVANS BARKER, JUDGE
                                                United States District Court
                                                Southern District of Indiana

---

[5](...continued)
the enforceability of the covenants at issue in this and other lawsuits initiated by CDW is a combined legal and factual question and, as such, this Court is not required to accept NETech's legal conclusion as true so long as facts remain in controversy. See Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Copies to:

Craig T Boggs
PERKINS COIE, LLP
cboggs@perkinscoie.com

Michael R. Brunelle
BARNES & THORNBURG LLP
mbrunelle@btlaw.com

David A. Given
BAKER & DANIELS
dagiven@bakerd.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Dwight D. Lueck
BARNES & THORNBURG
dwight.lueck@btlaw.com

Brandy R. McMillion
PERKINS COIE LLP
bmcmillion@perkinscoie.com

Laurence John Oleksa
PERKINS COIE, LLP
loleksa@perkinscoie.com

Abiman Rajadurai
PERKINS COIE, LLP
131 S. Dearborn St.,
Chicago, Il 60603

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

Aaron M. Staser
BARNES & THORNBURG LLP

aaron.staser@btlaw.com

Eric E Walker
PERKINS COIE, LLP
ewalker@perkinscoie.com

Christopher B Wilson
PERKINS COIE LLP
cwilson@perkinscoie.com