UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CDW LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-cv-00530-SEB-DML |
| | ) | |
| NETech CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## Order Denying Motion to Enforce (Dkt. 219)

Defendant NETech Corporation has filed a motion (Dkt. 219) to enforce a discovery order the court entered in this case on May 5, 2011 ("May 5 Order"). The parties fully briefed the motion, and on October 20, 2011, the court heard argument on the issues presented.

### Background

**A. Factual Contentions Underlying this Dispute[1]**

This litigation arises from the movement of employees from CDW[2] to NETech within the Indianapolis area in early 2010. CDW and NETech are competitors in the computer hardware industry and sell technology products and business solution services to customers in a wide variety of industries. Employees who left CDW for NETech were parties to non-competition and confidentiality agreements, and some of the customers with whom these employees worked while at CDW took their business to NETech after the employees left for NETech. CDW has

---

[1] This background section describes in general terms the parties' positions regarding their claims and the facts and inferences they intend to present or argue at trial, as the court understands them. It is intended to give context to the present discovery dispute, but is not intended in any manner to constitute factual findings by the court.

[2] "CDW" refers collectively to all the plaintiffs in this case.

sued NETech for tortious interference with contract and business relationships, misappropriation of trade secrets, unfair competition, and conspiracy to breach fiduciary duties. CDW seeks damages, in part, based on the value of business from their former customers who followed the old CDW employees to NETech.

One of NETech's defense theories is that CDW's own actions, and not any alleged tortious conduct on NETech's part, caused CDW to lose some or all of these customers. It claims that customers left because CDW uprooted sales representatives for accounts and reassigned new ones who had less familiarity with the customers' businesses and needs.

The reassignments at issue in this case were, according to CDW, made in furtherance of its corporate philosophy or model to silo customers sharing the same industry sector into the same company division, and to assign specialized account representatives for each sector and division—a verticalization model. For example, CDW wanted all of its health care industry customers to be served by a particular company division with specialized account representatives assigned to that division. This corporate structure applied also to government accounts, which were to be served by the CDW-Government entity and by account representatives specializing in that sector.

CDW had entered the Indianapolis market in about 2006 when it acquired businesses operated by Berbee Information Networks Corporation ("Berbee"), including Berbee's Indianapolis branch. Sometime in early 2008, CDW implemented what NETech now calls these "mass reassignments" of account representatives from the former Berbee branch to serve CDW's verticalization model. For the Indianapolis branch, this meant that some customers apparently were no longer served by a long-time or otherwise familiar account representative.

### B. The May 5 Order

The Court's May 5 Order addressed disputes concerning CDW's production obligations on three matters, two of which are pertinent to the current motion. The Order required CDW to produce to NETech documents concerning CDW's rationale for its 2008 mass reassignment project and documents concerning reassignments of particular accounts and particular account representatives resulting from the 2008 reassignment project and for which CDW is claiming any losses or damages in this case. (*See* May 5 Order at pp. 3-4.) It is important to note, however, that the court's order was the enforcement of an agreement the parties had reached. The court did not independently analyze the scope of the requests, their relevance, or the burdens and benefits of the requested discovery.

The May 5 Order also addressed NETech's request for discovery regarding CDW's contractual relationship with the government through its CDW-Government entity. At that time, NETech argued that documents relating to CDW-Government, including any concerning or relating to audits by GSA or concerns about audits by GSA, were relevant to a potential unclean hands defense to CDW's request for permanent injunctive relief. NETech asserted that the employees who left CDW for NETech did so because CDW was engaged in "deceiving the government" by siloing accounts into CDW-Government in order to charge the government more. The court denied NETech's motion to compel for lack of a sufficient nexus between CDW's alleged unclean hands and the employees' agreements at issue in this case. NETech had not advanced any other relevance basis for these documents. (*See* May 5 Order, at pp. 6-10.)

### C. NETech's Motion to Enforce

With its motion to enforce, NETech asserts that CDW has not complied with the May 5 Order as it relates to the "mass reassignment" documents. To comply with the parties'

agreement and the court's order on this subject, CDW searched for and gathered documents created or generated on or after January 1, 2008, regarding the 2008 reassignment project, its rationale, and the movement of particular accounts and account representatives relevant to the damages it seeks.  NETech is dissatisfied with the temporal scope of CDW's document production.  It contends that to comply with the May 5 Order, CDW must search for and produce documents all the way back to 2001.  In 2001, CDW apparently first conceived of or implemented its industry-segmented verticalization model, which was also apparently related to its creation of the CDW-Government entity.  NETech maintains that it needs to review documents back to the time of the inception and initial implementation of this business model to discover "the complete story behind Plaintiffs' decision to knowingly upset customers by reassigning their accounts."  Dkt. 222 at p.2.

## Analysis

**A.  CDW has not violated the May 5 Order.**

As the court explained in its May 5 Order, on the issue of the "mass reassignment" documents, the parties had reached an agreement on what CDW would produce in response to several of NETech's document requests, but each was suspicious of the other side's understanding and intentions with respect to that agreement.  The court therefore merely clarified and set forth its understanding of the parties' agreement and made it an order of the court.  That agreement, and the court's order implementing it, focuses on the 2008 reassignments, not on the much-earlier origin of and rationale for CDW's verticalization business model or the creation of CDW-Government.

At the time of the May 5 Order, the court did not discern from the NETech document requests at issue or from the arguments NETech made in connection with its discovery motion

before the court at that time that NETech was requesting documents dating to the origins of the corporate policies that influenced the reassignment decisions years later in 2008 (except in connection with the CDW-Government document requests, which will be discussed below). The scope and breadth of information NETech now claims is required by the May 5 Order is not clearly reflected in NETech's document requests themselves nor in its description of them in connection with its earlier motion to compel. *See, e.g.,* Dkt. 181 at p. 3.

NETech's document requests relate solely to the reassignments made in 2008. To discover the "rationales" for the 2008 reassignments, NETech wanted documents about the 2008 reassignment and the "related" communications from decision-makers regarding those 2008 reassignments. As NETech argued at that time, this court should require production of documents:

> Concerning Plaintiffs' rationales for the "mass reassignment" that took place in 2008, documents concerning the mass reassignments, including all related communications from the files of Plaintiffs' management, such as from the email files of Christina Rother, Tony Swanson, John Edwardson, John Bannister, and any other decision-makers who might have responsive materials.

*See id.* Neither NETech's discovery requests (as it articulated them then) nor this court's May 5 Order required CDW to produce documents relating to the origin of corporate policies that may have influenced the rationale for reassignments that took place many years later.

As a request to enforce the May 5 Order, NETech's motion must therefore fail.

**B. Irrespective of the May 5 Order, NETech has not demonstrated that CDW should be required to produce documents back to 2001.**

Although the court has determined that the information NETech now wants cannot be obtained through the strategic vehicle NETech used, it assumes the issue of whether NETech is entitled to the discovery may be raised in another way in another context. The court will therefore examine whether, irrespective of the May 5 Order, CDW should be required to produce

5

these documents. In other words, the court will assume that NETech timely requested the documents it now wants.[3]

Traditional Rule 26 principles guide the court's examination of the issue. Rule 26(b) allows a party to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense," but relevant nonprivileged information need not be produced if the court finds that the burden or expense of its production outweighs its likely benefit to resolution of the case on its merits.

NETech argues that discovery back to 2001 regarding CDW's decision to implement a verticalization model separating CDW-Government from other business segments is relevant to causation of the business losses CDW has alleged. NETech maintains it should be able to seek proof that customers who left CDW for NETech near the time CDW employees left CDW for NETech did so because CDW had reassigned the customers' account representatives without regard to its customers' needs. And NETech further wants to show that CDW was willing in 2008 to act in disregard of its customers' needs, because the real purpose of the verticalization model CDW adopted in 2001 is to allow it to protect its federal contracts from termination, obscure its violations of the most favored nation clauses of its federal contracts, and thus defraud the federal government.

This long chain of inferences NETech asks the court to connect is missing critical links. NETech does not suggest that customers left CDW for NETech because the customers believed

---

[3] This assumption requires a significant leap. First, production of the "mass reassignment" documents was the subject of an agreed narrowing or clarification by the parties (not to mention an order of the court) that arguably supersedes the original requests. Second, the court is not convinced that the parties originally understood NETech's document requests (particularly document request 4) or their agreement enforced in the court's May 5 Order to encompass documents regarding the adoption of corporate policies that seven years later influenced the 2008 reassignment decision. The expansive reading NETech now gives its discovery requests on this issue is inconsistent with its earlier representations.

CDW followed a corporate model supposedly created for the purpose of defrauding the federal government.  NETech argues only that customers left for NETech because their usual account representatives were reassigned.  Full discovery has already been permitted on questions like (1) whether at the relevant time account representatives for certain CDW customers were actually reassigned or were scheduled to be reassigned, (2) whether customers CDW lost had been told that their account representatives would be replaced, and (3) whether the actual or potential reassignment played a role in the customers' switch to NETech.  In short, the causation question is whether the *2008* reassignments had a role in the *customers' decisions* to switch: the impetus for *CDW's decision* in *2001* to create CDW-Government has virtually no relevance to that question.

CDW suspects (legitimately, in the court's view) that NETech's attempt to bring this information within the scope of discovery on the "mass reassignment" issue is an end run around the May 5 Order's denial of NETech's motion to compel production of the CDW-Government documents.  The attenuated case NETech makes for the relevance of these documents to the causation issue does appear indicative of a renewed effort to obtain unrelated evidence to suggest to the jury that CDW engages in unlawful behavior aimed at defrauding the federal government.  The court has already ruled on that issue.

NETech has, however, made a more nuanced relevance argument that merits further discussion.  It maintains that CDW has "opened the door" regarding the legitimacy and purpose of its verticalization model.  NETech contends that deposition testimony from CDW representatives, statements in CDW documents, and an expert opinion CDW has served paint a false picture of the verticalization model that would permit CDW to urge at trial that the purpose

7

of its business model was to improve customer relationships and sales. NETech says this would be a positive spin on a nefarious business plan.

As a threshold matter, the court first must consider how that sort of evidence—spun or otherwise—could be relevant in this case. The court can conceive (though only vaguely) of at least one way. Perhaps NETech surmises that a jury would naturally be skeptical of the suggestion that CDW set out on a course of conduct (the reassignments) that would have alienated its customers. NETech could counter that skepticism by showing that CDW did not care if it lost non-government customers because its true purpose was to keep CDW's most important and valuable customer, the government.

Notwithstanding this speculation, the reasons why CDW implemented and continues to follow its verticalization model is of slim, marginal relevance to whether CDW's customers were unhappy and changed vendors because CDW reassigned the customers' account representatives. Whether its business model is laudable and designed to benefit customers still provides virtually no insight about whether a customer was dissatisfied or not when its account representative was reassigned. In the court's view, the discovery that NETech has already been afforded (i.e., the documents and communications in connection with the 2008 reassignments and the affected customers and account representatives) allowed for sufficient probing of NETech's causation theory. That discovery, in fact, included documents and testimony (1) that the reassignments were made consistent with CDW's verticalization model, and (2) that that model serves the purpose of avoiding GSA audit (or complying with GSA policy, depending on one's perspective), a matter of high importance to CDW.[4]

---

[4] CDW represents to the court that it has "searched and confirmed production of documents relating to the reassignment of accounts and any reference to the General Services Administration." (Dkt. 224 at p. 6 n.4)

8

The court's balance of the Rule 26(b)(2)(C) factors—low level of relevance, burdensomeness and expense of discovery of documents back to 2001, and their cumulative nature—as well as the fact that the documents are, at best, barely within the scope[5] of any document requests—lead the court to conclude that the discovery CDW seeks by its motion to enforce should be denied.

One final matter concerns CDW's expert report of Tony Fuller, an accountant specializing in advising corporations on compliance with federal and state government contracting requirements. CDW's counsel explained at argument that Mr. Fuller's expert opinion is prophylactic and merely responds to NETech's contention that a company's segregation of its government-contract work in a division separate from other work is a practice designed to defraud the federal government. (Dkt. 242, p. 3) The court takes CDW at its word that service of this expert report does not mean that CDW intends to prove damages or some other element of its claims by proof that verticalization is a legitimate and worthy corporate model.

## **Conclusion**

For the foregoing reasons, NETech's motion (Dkt. 219) to enforce the court's May 5, 2011 order is DENIED.

So ORDERED.

Dated:  01/04/2012

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[5] See discussion at pp. 4-5 and note 3 supra.

9

Distribution:

Craig T Boggs
PERKINS COIE, LLP
cboggs@perkinscoie.com

Jeannil Boji
PERKINS COIE LLP
jboji@perkinscoie.com

Michael R. Brunelle
BARNES & THORNBURG LLP
mbrunelle@btlaw.com

David A. Given
BAKER & DANIELS
dagiven@bakerd.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Dwight D. Lueck
BARNES & THORNBURG
dwight.lueck@btlaw.com

Brandy R. McMillion
PERKINS COIE LLP
bmcmillion@perkinscoie.com

Abiman Rajadurai
PERKINS COIE, LLP
arajadurai@perkinscoie.com

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

Aaron M. Staser
BARNES & THORNBURG LLP
aaron.staser@btlaw.com

Eric E Walker
PERKINS COIE, LLP
ewalker@perkinscoie.com

Christopher B Wilson
PERKINS COIE LLP
cwilson@perkinscoie.com