UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CDW LLC, CDW DIRECT LLC, and BERBEE INFORMATION NETWORKS CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | 1:10-cv-00530-SEB-DML |
| vs. | ) ) | |
| NETECH CORPORATION, | ) ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

This cause is before the Court on the motion of Defendant NETech Corporation ("NETech") for partial summary judgment. [Docket No. 184]. Specifically, NETech requests that the Court grant partial summary judgment in its favor with respect to the tortious interference with contractual relationship claim of CDW LLC, CDW Direct LLC ("CDW Direct"), and Berbee Information Networks Corporation ("Berbee") (collectively, "Plaintiffs"). For the reasons detailed herein, NETech's motion is <u>GRANTED</u>.

**I.  Factual Background**

In September 2006, Berbee Information Networks Corporation ("Berbee") employed, among others, sales executives Rick Dinkins, Ann Garcia, and Nicole Sawa. Berbee's employees signed employment agreements containing convenants not to

compete with Berbee. Paragraph 8 of the employment agreement executed by Garcia and Dinkins (the "Garcia/Dinkins Agreement") provided as follows:

> . . . Employee agrees that while employed by Berbee and for a period of equal to his or her length of employment, but not greater than twelve (12) months from the termination of this Agreement for whatever reason, he or she shall not directly or indirectly, whether as an owner, stockholder, partner, employee, consultant, agent, independent contractor or otherwise, for himself or herself, or on behalf of any other person or entity, engage directly or indirectly, or enter into any aspect of the business of Berbee (as such business activities exist as of the date of his or her termination of employment).
>
> The forms of competition prohibited by this paragraph shall include, but not be limited to, the following activities to the extent that any of them are competitive with the business of Berbee: (a) soliciting or assisting in the solicitation of customers of Berbee; (b) supplying goods or rendering services or assisting in such activities, to customers of Berbee; (c) diverting or attempting to divert any customer's business from Berbee or otherwise interfering with the business relationships between Berbee and its customers; (d) planning for or the organization of any business activity competitive with Berbee's business; (e) combination or conspiracy with other employees of Berbee for the purpose of acquisition of any such competitive business activity; (f) actively soliciting for hire any employees of Berbee; or (g) use or dissemination of Confidential Business Information, except in furtherance of the business interest of Berbee (subject to the provisions of paragraph 4 hereof).

Garcia/Dinkins Agreements. The employment agreement executed by Nicole Sawa also contained a covenant not to compete. In both versions of the employment agreement, competition was restricted as to "Berbee." While there was no mention of restrictions on competition with any other company, the agreements specifically state that they are binding with regard to any successors of the respective parties.

### A. Relationship Between Plaintiffs

The Plaintiffs in this case are CDW LLC and two of its subsidiaries, CDW Direct

LLC, and Berbee. CDW LLC is the parent company of these and other subsidiaries, including CDW Government. Berbee became a subsidiary of CDW LLC on September 16, 2006 when it merged with CDW Acquisition Sub, Inc, which was created only for purposes of acquiring Berbee. Rother Decl. ¶¶ 4-5. CDW LLC paid $184,000,000 to purchase Berbee. Id. ¶ 4. Both parties agree that Berbee was the surviving corporation as a result of this merger.[1] Id. ¶ 6. All of these CDW entities sell hardware, software, and technology parts and services. However, they each sell these products to different commercial entities. For instance, CDW Direct sells to commercial businesses and not-for-profit organizations, and CDW Government sells to local, state, and federal governments, educational institutions, and healthcare facilities.

Following the merger, some Berbee employees were transferred to work for other CDW entities, including CDW Direct and CDW Government. For instance, Garcia and Dinkins became employees of CDW Direct in July of 2008. Sawa became an employee of CDW Direct in June 2009. Plaintiffs stress that this change in employment was part of several measures to integrate Berbee with CDW LLC and thus Plaintiffs characterize the employees' transfer from Berbee to CDW Direct as "internal," despite the undisputed fact that CDW Direct and Berbee are separate subsidiaries of CDW LLC. Despite the transfer, these employees continued to perform the same work for the same clients, from the same

---

[1] Approximately one year after the merger took place, Berbee's name was officially changed to "CDW Berbee." Rother Decl. ¶ 9. Then, in June 2010, this entity was renamed "CDW Technologies." Id. ¶ 12. However, we will shall use the name Berbee throughout this entry.

3

offices, and with the same supervisors. Rother Decl. ¶ 7. The employees did not sign new employment agreements as part of their transfers.

Eventually, Garcia, Dinkins, and Sawa all left employment at CDW Direct to work for NETech. Shortly after their departure from CDW Direct, all three received letters from Plaintiffs' law firm stating (in relevant part) as follows:

> I represent Berbee Information Networks Corporation and CDW LLC. It has come to my clients' attention that you have become employed by NETech Corporation in violation of certain promises you made in [your employment agreement]. . . .
>
> As you know, the Agreement prohibits you, [for a period specified in each employment agreement], from working with or for a competitor and from soliciting certain of your former colleagues and customers. The Agreement also prohibits you from using or disclosing any of my clients' confidential or secret information, or other technical, business, proprietary or financial information that is not available to the public generally or to competitors. In addition, you specifically agreed that when you left your job, you would promptly return *all* records, memoranda, notes, plans, reports computer tapes and software and other documents and data which constitute Confidential Business Information.
>
> We demand that you ***immediately*** return any and all information related to Berbee and CDW that is in your possession, whether that information is: (i) a hard copy document; (ii) on a work, home, or laptop computer; (iii) on a blackberry, PDA, iPhone, or cell phone; or (iv) on an external hard drive, thumb drive, or any other peice of extenal medial that permits the storage of information. You cannot keep any copies. You must collect any information that you may have given to others (and all copies) and return that as well. You cannot review or use any of this information.
>
> In addition to requiring the return of all information related to your former employment, as noted above, the Agreement also prohibits you from being employed by a competitor for . . . short period of time after leaving your job. NETech Corporation is clearly competitive with . . . [the] core business of Berbee, as well as with CDW, and we demand that you honor your agreement and cease any work for NETech for at least the term outlined in the

agreement. To the extent that there was any confusion over whether NETech is a competitor, we write to let you know (pursuant to Section 8 of the Agreement) that NETech is a competitor, and we attach as Exhibit 2 to this letter a representative, non-exhaustive list of other competitors that the Agrement bars you from joining for the limited restricted period. If our information is not correct, and you have not become an employee of NETech in violation of the Agreement, please let me know as soon as possible.

Because we believe you are working for NETech, I am also writing to inform you that my clients may have legal claims against you. Therefore, you must preserve and not destroy documents (including all e-mail and other electronically stored information) relating to Berbee or CDW (that is not otherwise required to be returned), or your recruitment, hiring, or work at NETech, or any third party with whom you have discussed alternative employment. This includes, but is not limited to, any hard copy document and any e-mail in a personal e-mail account and includes all active, archived, and deleted e-mail – including on your home/personal computer. We demand that you *immediately* preserve all such information whether it is: (i) a hard copy document; (ii) on a work, home, or laptop computer; (iii) on a blackberry, PDA, iPhone, or cell phone; or (iv) on an external hard drive, thumb drive, or any other piece of external media that permits the storage of information. If any electronic system has a function that includes deleting materials automatically after a certain time period you must disable such a system so that all materials currently existing, and all materials created on a going forward basis, are preserved.

We take this matter extremely seriously and it is my clients' policy to take swift, appropriate steps to protect their interests. Please direct all future communications to me.

Def.'s Ex. 8.

According to Garcia and Dinkins, they did not consider the referenced employment restrictions enforceable as to them and, thus, continued working for NETech. Garcia Decl. ¶ 10; Dinkins Decl. ¶ 10.

### B. Procedural Background of the Litigation

In the Spring of 2010, Plaintiffs filed a Complaint against Defendant requesting, <u>inter</u>

alia, a preliminary injunction. Specifically, Plaintiffs sought an order enjoining NETech from using CDW's confidential information and trade secrets; contacting or soliciting CDW's customers; soliciting or hiring any current CDW workers or workers terminated within the past twelve months; and otherwise unfairly competing against CDW. An evidentiary hearing that spanned several days was conducted by the Court, on the basis of which Plaintiffs' motion for preliminary injunction was granted. Dkt. No. 96. The Court's order enjoined Defendant in the following terms:

> 1. NETech is enjoined from retention, communication, distribution, or other such use of any confidential materials or trade secret information obtained by CDW's former employees now employed by NETech, and shall forthwith diligently and thoroughly search for and relinquish to CDW any and all such materials in its possession.
>
> 2. NETech is enjoined from interfering with the former CDW employees' covenants not to compete or disclose confidential information in any way through territory or account assignments, or directing or encouraging contacts with accounts previously developed or serviced by the former CDW employees while those employees were employed by CDW, or from remunerating these employees for any such work produced on behalf of NETech; or in any other way employing, engaging, or otherwise assisting any former CDW employee to perform any duties or services that would in any respect violate the terms of his/her covenant not to compete and confidentiality agreement as well as this preliminary injunction, both of which prohibitions shall commence with the date of the issuance of this Order and extend for such a time as to be in accordance with the time periods contained in each relevant employee's non-compete agreement. This prohibition shall also be coextensive with the injunction in the parallel Wisconsin State Court litigation;
>
> 3. NETech is enjoined from recruiting or hiring any other CDW sales agents to perform work in Indiana who are subject to comparably drawn covenants not to compete, while at the same time placing them in the same territories they served when employed by CDW with responsibility for their former customer accounts, for the duration of and consistent with the non-compete agreements between CDW and its current and former employees. When and

>if NETech engages in future recruitment efforts targeted at CDW employees, notice of such contacts must be provided to NETech's counsel who shall thereafter communicate with CDW's counsel to ensure that those contacts are consistent with and do not encourage violations of the targeted employees' non-compete agreements;
>
>4. NETech is not enjoined from attempting further sales to or servicing of CDW customers tied to or otherwise associated with the former CDW employees, so long as the contacts maintained by NETech with those customers are conducted by someone other than the former CDW employees, while such employees are subject to CDW non-compete agreements. Any such sales or servicing must be performed without reliance on confidential CDW materials or information which NETech may have access.
>
>5. This Order in no way impacts or impairs the parties' rights in the related ongoing proceeding in Wisconsin State Court, <u>CDW Direct, LLC, et al. v. Peterson et al.</u>, Case No. 10-cv-2144 (Wis.Cir.Ct. June 30, 2010), and shall therefore have no precedential impact on that or any other pending litigation.

Based on the evidence presented at the evidentiary hearing, the Court held that Plaintiffs' employment agreements with its former employees, including Dinkins and Garcia, were likely to be found valid and enforceable on the merits. Dkt. No. 96 at 16. We based our conclusion on the Wisconsin Supreme Court's decision in <u>Star Direct, Inc. v. Dal Pra</u>, which held that reasonable restrictions on solicitation of former customers and provisions ensuring the protection of confidential information were reasonable, enforceable restrictions. 767 N.W.2d 898 (Wis. 2009). We found another portion of the <u>Star Direct</u> holding – that otherwise reasonable portions of an employment agreement might be unenforceable if inextricably linked to another portion that is overly broad – inapplicable because the restrictions in Plaintiffs' agreements were specifically enumerated and divisible from potentially over-broad portions of the agreements. We also rejected NETech's argument that

7

Plaintiffs could not enforce the employment agreements by virtue of the fact that those agreements were made with Berbee instead of CDW. We so concluded based on the premise that CDW was the surviving entity after its merger with Berbee and based on controlling legal authority that such a surviving entity was entitled to enforce the agreement.[2] See Dkt. No. 96 at 12 n. 7.

At approximately the same time this Court had before it this litigation during the Spring of 2010, Plaintiffs initiated a parallel proceeding in Wisconsin state court against the individual employees who had left CDW's employ for NETech. A stipulated preliminary injunction was granted in that case enjoining those individual employees from violating the employment agreements that are at issue here in this case. CDW Direct, LLC, et al. v. Peterson et al., Case No. 10-cv-2144 (Wis. Cir. Ct. June 30, 2010).

On November 18, 2010, NETech filed a motion seeking a modification of the

---

[2]The day after the Court issued its preliminary injunction, NETech filed a "request for clarification" regarding this portion of the Court's holding. Dkt. No. 98. Specifically, NETech maintained that only Berbee could enforce the employment agreement because it, and not CDW, was the surviving entity following the merger between Berbee and CDW Acquisitions Sub, Inc. The importance of NETech's contention was two-fold. First, they requested that only Berbee be able to enforce the employment agreements, as opposed to its parent company, CDW, or its sister subsidiary, CDW Direct. Second, NETech hoped to exploit the distinction between these entities in order to support an argument that the employees were no longer employed by Berbee when CDW Direct became their employer, causing the clock on their respective employment agreements to begin to run on that date, rather than at the time they left CDW Direct to work for NETech.
    The Court denied NETech's request for clarification, finding that is was actually a "disguised motion for reconsideration" of the Court's order granting Plaintiffs' Motion for Preliminary Injunction. Dkt. No. 102. We further noted that NETech had repeatedly raised this issue at the hearing but had failed to substantiate its theory with evidence or a brief on the subject, despite the Court's express grant of leave to do so. Id.

preliminary injunction (Dkt. No. 130). On January 31, 2011, the Court heard argument on that motion as well as on Plaintiffs' motion for an order to show cause why NETech should not be held in contempt. NETech's request was largely based on a decision handed down in the aforementioned parallel proceeding in Wisconsin that the Dinkins/Garcia employment agreement was void and unenforceable.[3] CDW Direct, LLC, et al. v. Peterson et al., Case No. 10-cv-2144 (Wis. Cir. Ct. Nov. 8, 2010). During that hearing, the Court expressed hesitancy about modifying its order based on the Wisconsin decision because that decision was not binding on this Court and because Plaintiffs represented that they intended to appeal the Wisconsin decision making any modification by this Court based on that decision premature. Following that hearing, the Court denied Plaintiffs' request for an order to show cause but, in recognition of the Wisconsin decision, modified Paragraph 2 of the preliminary injunction by substituting the final sentence of the paragraph ordering that the restriction be considered "coextensive" with the Wisconsin State Court litigation with the following

---

[3]The Wisconsin state court found that Paragraph 8 of the Dinkins/Garcia Agreement, as quoted above, contained three non-compete provisions: a non-competition covenant found in the first paragraph; a non-solicitation covenant in the second paragraph, sections (a), (b), (c), and (f); and a confidentiality covenant in the second paragraph, section (g). The court found the first non-competition provision, which Plaintiffs admitted they were not attempting to enforce, unreasonable because it contained no geographical restriction and because it found that it was not necessary for Plaintiffs' protection. Then, the court ruled the non-solicitation covenant unenforceable because it was considered indivisible from the non-competition provision. The court reasoned that only the non-competition provision from Paragraph 8 contained a time restraint. The only way to read the non-solicitation provision to contain a time restraint (without which, the provision would be unreasonable per se), according to the Wisconsin court, was to link it to the time limit imposed in the overly broad non-competition covenant. Thus, because the non-solicitation covenant could not be independently read, the court found that it, too, was unenforceable.

sentence: "This prohibition shall apply in all states except Wisconsin, in recognition of the ruling in the parallel Wisconsin State Court litigation and so long as it is in effect." [Docket No. 169]. The Court expressed its hope that this modification would quell both NETech's concern regarding its ability to employ individuals whose non-compete agreements had been deemed unenforceable by the Wisconsin courts and Plaintiffs' concern regarding the need to pursue additional litigation in other states.

Shortly thereafter, NETech filed the instant motion for partial summary judgment requesting that the Court find in its favor that: (1) the non-competition and non-solicitation provisions in the Garcia/Dinkins Agreement are unenforceable; and/or (2) the post-employment obligations contained in all versions of the employment agreements began to run when the employees were transferred from Berbee to CDW Direct. Both of these contentions relate to the merits of Plaintiffs' claim of tortious interference with contractual relationships against NETech. As discussed below, we agree with NETech with regard to the second of these contentions and that judgment thus should be entered in its favor on Plaintiffs' tortious interference with contract claim. We decline therefore to address the first of NETech's contentions since its resolution is unnecessary to the relief granted here.

## II. Legal Analysis

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could

return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the

legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

NETech maintains that the post-employment contractual obligations of the former employees of Plaintiff Berbee began to run when those employees were transferred to CDW Direct. As noted above, the Court previously rejected this argument on the grounds that CDW LLC was the surviving entity following the merger. Subsequent briefing, however, makes clear that Plaintiffs now concede that Berbee was, in fact, the surviving corporation as a result of the merger between Berbee and CDW Acquisitions Sub, Inc., and not "CDW."[4] See Pls.' Resp. at 7-8. Following the merger of these two entities, Berbee continued on as a wholly owned subsidiary of CDW LLC. Likewise, CDW Direct is a CDW subsidiary and, thus, a "sister subsidiary" of Berbee.

The parties agree that the right to enforce employment agreements, such as those at issue in this case, pass through corporate mergers to the surviving entity. Farm Credit Serv. of North Central Wis., ACA v. Wysocki, 627 N.W.2d 444, 450-52 (Wis. 2001); Def.'s Reply at 14; Pls.' Resp. at 19. The parties also do not dispute that the surviving entity to the corporate merger, Berbee, can enforce the rights pursuant to the employment agreements (to the extent those rights exist). Rather, the parties' dispute centers on whether CDW, LLC (the

---

[4]The parties also agree that CDW Acquisition Sub, Inc. ceased to exist following the merger with Berbee.

12

parent company of Berbee) and/or CDW Direct (another CDW subsidiary) may enforce those rights. Our analysis convinces us that under Wisconsin law they cannot.[5]  Berndt v. Fairfield Resorts, Inc., 337 F. Supp. 2d 1120, 1131 (W.D. Wis. 2004) ("Rights made by contract with a subsidiary are the subsidiary's rights alone. They do not automatically transfer to a parent company solely by virtue of common ownership."); Frier v. Vilione, 766 N.W.2d 517, 525 (Wis. 2009) ("a corporation does not 'have independent standing to sue for injuries done to a sister or subsidiary corporation, despite the fact that their businesses are intertwined and the success of one is dependent on that of the other.'")(quoting 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 36 at 95-96 (perm. ed., rev. vol. 2006)). Thus, on the basis of the record now before us, we vacate our previous holding and find that neither CDW LLC or CDW Direct has the right to enforce the contractual rights possessed by Berbee.

Having determined that only Berbee may enforce the employment agreements at issue here, we address whether there is a genuine issue of material fact with regard to whether the employees' move from Berbee to its sister subsidiary, CDW Direct, constituted the "termination" of the employment agreement. NETech's position is that the employees left

---

[5] The cases Plaintiffs contend hold to the contrary are not binding and, more importantly, are entirely distinguishable. In Siemens Med. Solutions Health Serv. Corp v. Carmelengo, the district court simply held that the surviving company could enforce a covenant not to compete. 167 F. Supp. 2d 752, 759 (E.D. Pa. 2001). Here, as explained above, Plaintiffs concede that Berbee is the surviving company, not the parent, CDW LLC, or its sister subsidiary, CDW Direct. Moreover, in Williams v. Powell Elec. Mfg. Co., Inc., the court held that a *subsidiary* corporation could enforce part of a covenant not to compete entered into by the *parent*. But this holding has no bearing on a parent company's rights with respect to the contracts of its subsidiaries.

one corporation – Plaintiff Berbee – to work for another – CDW Direct – and in so doing, the post-employment obligations began to run at the time of those transfers, in which case any obligations they may have had towards Berbee expired at the time they left CDW Direct for employment at NETech.[6] Plaintiffs rejoin that, because the employees continued to perform the same job, for the same clients, in the same territories, reporting to the same supervisor, in the same location, and without any fundamental change in their job functions, their post-employment obligations did not begin to run until the employees left CDW Direct for NETech. We are unpersuaded by Plaintiffs' arguments in this regard.

There simply is no denying that Berbee and its sister subsidiary, CDW Direct, are separate and distinct corporate entities. While they are both subsidiaries of the same parent company, CDW LLC, but they are separate and distinct nonetheless. That fact dictates a finding that the transfers of employment from one such entity to another, whether to perform the identical duties, under identical circumstances, in the same place, marked the end of employment with one entity and the beginning of employment with another. As the Wisconsin Supreme Court observed in Krier:

---

[6]Rick Dinkins, Ann Garcia, Dan Ryan, and Chris Jones transitioned from employment for Plaintiff Berbee and to Plaintiff CDW Direct in July, 2008. Dinkins, Garcia, Ryan, Jones Declarations. Each of these employees had signed 12-month non-compete agreements. If the employees' transition to CDW Direct constituted a termination of their employment, it means that their respective post-employment obligations expired in July, 2009 – months before any of these employees began to work for NETech. Id. Nicole Sawa made a similar transition in June, 2009. Sawa Decl. ¶ 6. Thus, if her transition to CDW Direct constituted a termination of her employment with Berbee, her 6-month non-compete agreement with Plaintiff Berbee expired in December, 2009 – months before she began to work for NETech in April, 2010. Sawa Decl. ¶ 8.

14

> [The parties] cannot pick and choose when they would like to operate separately and when they would like to operate as one corporation. Their business's interdependence does not blur the entities' distinct corporate structures.
>
> A particular type of corporation may be the preferred method of doing business for any number of reasons including tax and liability implications, and these individuals chose to operate a business by creating separate and distinct corporate entities. Presumably, [Plaintiffs] made a conscious decision to create three different corporations with different types of corporate entities to carry out their operations. While they likely enjoyed certain advantages from doing business as three separate corporate entities, they also are bound by the disadvantages of forming separate corporations.
>
> The plaintiffs essentially assert that because the entities function as one overall business, corporate principles ought to be overlooked in the interest of justice. However, when [Plaintiffs] were joint owners of the three entities, if one of their corporate entities were being sued, [Plaintiffs] would not likely suggest that the corporations were actually interdependent such that the assets of all three entities would be available for damages. In fact, in a business such as waste disposal, there may be deliberate reasons to separate the entity that holds assets from other entities that might have greater exposure to liability. One cannot maintain the corporate structure when it inures to one's benefit and then ignore the constraints of corporate law when it does not. These parties formed separate entities that remain separate entities.

766 N.W.2d at 525. The cases cited by Plaintiffs do not establish that a transfer to a sister subsidiary does not constitute a change in employers. In Peters v. Davidson, for instance, the court held that a merger between the entity with which an employee had negotiated an employment agreement and another company did not terminate that employee's term of employment. 359 N.E.2d 556 (Ind. Ct. App. 1977). Likewise, in Am. Homecare Supply Mid-Atlantic, LLC v. Gannon, the court held that the subsidiary which was the former employer could enforce a restrictive covenant against that former employee, despite the fact that it was sold by one parent company to another. 10 Pa. D. & C.5th 362, 381-85 (Pa. Com.

Pl. 2009). As explained above, however, in our case, two successive events occurred: first, Berbee merged with CDW Acquisitions Sub, Inc., creating Berbee as the surviving entity; second, the individuals employed by Berbee were transferred to CDW Direct, another CDW LLC subsidiary. This second event, according to NETech, constituted a change in employment and we agree with that analysis . The cases cited by Plaintiffs, if applicable at all, would only be relevant with regard to the first of these two events. That is not the situation before us.

Whatever post-employment limitations obliged the former Berbee employees under their employment agreements were triggered when they ceased to work for that company. By the time the employees were hired by NETech, those obligations had expired. Thus, Plaintiffs' tortious interference claim fails as a matter of law.

### III. Conclusion

As discussed herein, there are no genuine issues of material fact underlying Plaintiffs' tortious interference with contract claim against NETech, and NETech is entitled to judgment as a matter of law on this theory of relief. NETech's Motion for Partial Summary Judgment accordingly is <u>GRANTED</u>.

IT IS SO ORDERED.

Date: 02/16/2012

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Craig T Boggs
PERKINS COIE, LLP
cboggs@perkinscoie.com

Jeannil Boji
PERKINS COIE LLP
jboji@perkinscoie.com

Michael R. Brunelle
BARNES & THORNBURG LLP
mbrunelle@btlaw.com

David A. Given
FAEGRE BAKER DANIELS LLP - Indianapolis
david.given@faegrebd.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Dwight D. Lueck
BARNES & THORNBURG
dwight.lueck@btlaw.com

Brandy R. McMillion
PERKINS COIE LLP
bmcmillion@perkinscoie.com

Abiman Rajadurai
PERKINS COIE, LLP
arajadurai@perkinscoie.com

Jennifer Lynn Schuster
BARNES & THORNBURG LLP
jschuster@btlaw.com

Aaron M. Staser
BARNES & THORNBURG LLP
aaron.staser@btlaw.com

Eric E Walker
PERKINS COIE, LLP
ewalker@perkinscoie.com

Christopher B Wilson
PERKINS COIE LLP
cwilson@perkinscoie.com