# Exhibit

# A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CDW LLC, CDW DIRECT, LLC, and BERBEE INFORMATION NETWORKS CORPORATION (n/k/a CDW TECHNOLOGIES, INC.), | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CASE NO. 1:10-cv-0530-SEB DML |
| NETECH CORPORATION, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PERMANENT INJUNCTIVE AND OTHER RELIEF**

Plaintiffs CDW LLC, CDW Direct LLC, CDW Government LLC, and Berbee Information Networks Corporation (collectively "CDW"), by and through their undersigned attorneys, brings this Amended Complaint for Injunctive and Other Relief against Defendant NETech Corp. ("NETech"). For its Amended Complaint, CDW alleges as follows:

**Parties**

1.     CDW LLC, formerly CDW Corporation, is an Illinois limited liability company with its principal place of business in Vernon Hills, Illinois and none of its members are citizens of Michigan. CDW is a leading provider of technology solutions to businesses, educational and governmental institutions. CDW has more than 6,500 employees in 37 states. CDW maintains offices in, among other locations, Chandler, Arizona, Buena Park, California, Shelton, Connecticut, Vernon Hills, Chicago and Mettawa, Illinois, Carmel and Evansville, Indiana, Louisville, Kentucky, Southfield and Ada, Michigan, Brooklyn Park, Minnesota, Las Vegas, Nevada, Eatontown and Voorhees, New York, Cincinnati and Brecksville, Ohio, Herndon, Virginia, and Grand Chute, Fitchburg, Waukesha and Schofield, Wisconsin.

2.      CDW Direct, LLC ("CDW Direct") is an Illinois limited liability company with its principal place of business in Vernon Hills, Illinois and none of its members are citizens of Michigan.  CDW Direct, LLC is a subsidiary of CDW LLC.

3.      CDW Government LLC ("CDW-G"), formerly CDW Government, Inc., is an Illinois limited liability company with its principal place of business in Vernon Hills, Illinois. CDW-G is a wholly-owned subsidiary of CDW LLC.

4.      Berbee Information Networks Corporation, currently known as CDW Technologies, Inc., is a Wisconsin corporation with its principal place of business in Vernon Hills, Illinois ("Berbee").  In connection with a merger transaction in 2006, CDW paid $184 million in cash for Berbee's predecessor, Berbee Information Networks Corporation, a Delaware corporation ("Berbee Delaware").  CDW is the successor to both Berbee and Berbee Delaware.

5.      NETech is a Michigan corporation in Grand Rapids, Michigan with offices throughout the Midwest, including Michigan, Indiana, Wisconsin and Ohio.  NETech is a regional designer and installer of IP-based networks.

### Jurisdiction and Venue

6.      Jurisdiction over this action is conferred on this Court by 28 U.S.C. 1332(a) in that the matter in controversy exceeds the sum of value of $75,000 and is between citizens of different States.

7.      The United States District Court for the Southern District of Indiana is the proper venue pursuant to 28 U.S.C. §1391(a).

### Factual Allegations Applicable To All Counts

8.      Like CDW, NETech sells Cisco technology products and solutions to businesses. NETech and CDW are direct competitors.  Both CDW and NETech employ sales personnel as

-2-

well as network engineers who assist in the assessment, installation and services of these technology products and systems.

9.      CDW spends millions of dollars each year developing its coworker[1] and customer relationships.  With regard to its coworkers, CDW has a robust recruiting and training program through which it expends significant resources to recruit and train new coworkers.  CDW maintains a sales academy to assist in these training efforts, where coworkers learn CDW's operations and techniques.  Coworkers also receive ongoing training throughout their careers at CDW, and CDW expends resources to make sure its coworkers are kept current on all the latest technical developments and product information.  CDW is known in the industry for spending significant resources on its coworkers to ensure they are the best in their fields.

10.      Specifically, CDW expends significant resources in training its sales staff and its engineers in their respective fields.  As part of its investment, CDW pays its sales force guaranteed "draws" in their early developmental stages even when they are not producing corresponding revenue for CDW.  Likewise, CDW pays its engineers to keep current on all technology, even when they are not assigned to any particular billable projects.  In this way, CDW is able to create and maintain the best sales force and engineers in the marketplace. Competitors recognize CDW's coworkers as the most well-trained and highly skilled in the industry.  CDW protects its investment in its coworkers through employment agreements that contain restrictions on their post-employment activities.

11.      Similarly, CDW invests significant time and resources in procuring and cultivating client relationships.  CDW invests substantial sums of money each year to acquire detailed knowledge of the clients' business and technological needs.  CDW takes great care to retain and protect information related to its clients' unique technological requirements.

---

[1]      CDW refers to its employees as "coworkers."

12.     Beginning in or around January 2010, NETech, through its Vice-President of Sales and Operations, Mark Wierenga ("Wierenga") and Chief Executive Officer, James Engen ("Engen"), began aggressively recruiting CDW coworkers to leave CDW and expand NETech's presence into Indiana and Wisconsin, including but not limited to the following individuals who are now or once were employed by NETech (collectively, the "Former CDW Coworkers"):

**Indiana:**

- John Bannister, the former branch manager of CDW Direct's Indianapolis office, to NETech as co-branch manager in NETech's Carmel, Indiana office.

- Ann Garcia, a former CDW Direct advanced technology account executive, to NETech as an account executive in NETech's Carmel, Indiana office.

- Rick Dinkins, a former CDW Direct advanced technology account executive, to NETech in as an account executive in NETech's Carmel, Indiana office.

- Nicole Sawa, a former CDW Direct solution architect, to NETech in a similar capacity in NETech's Carmel, Indiana office.

- Gary "Dean" Lochkovic, a former Berbee lead network engineer, to NETech as a lead network engineer in NETech's Carmel, Indiana office.

- Brian Walls, a former Berbee network engineer, to NETech as a network engineer in NETech's Carmel, Indiana office.

- Jason Netherland, a former Berbee network engineer, to NETech as a network engineer in NETech's Carmel, Indiana office.

- Purushothaman Nammalwar, a former Berbee network engineer, to NETech as a network engineer in NETech's Carmel, Indiana office.

**Wisconsin:**

- Michael Sanders, the former branch manager of CDW Direct's Madison, Wisconsin office, to NETech as branch manager of NETech's Middleton, Wisconsin office.

- Dan Ryan, a former CDW Direct advanced technology account executive, to NETech as an account executive in NETech's Middleton, Wisconsin office.

- Chris Jones, a former CDW Direct advanced technology account executive, to NETech as an account executive in NETech's Middleton, Wisconsin office.

-4-

- Amy Peterson, a former CDW Direct inside sales representative, to NETech in an inside sales capacity in Wisconsin.

13.     Additionally, NETech has recruited current CDW coworkers Andrew Short, Senthil Natarajan, Dennis Heim, Doug Bobo, Brian Maddox, Eric Butcher, Ryan Greer, Pat Bittner and Mike Voegele to leave CDW and join NETech in Indiana (collectively, the "Targeted Indiana CDW Workers") and Dave O'Brien, John Hoppe, Amanda Lynch, Mike Erikson, Perry Jannette, Matt Toltzein, Eric Fairfield, Gillian Eccles, Mike Murphy, Jim Martin, Gary Lorge, Bill Castle and Kevin Flynn to leave CDW and join NETech's Middleton, Wisconsin office (collectively, the "Targeted Wisconsin CDW Coworkers" and together with the Targeted Indiana CDW Coworkers, the "Targeted CDW Coworkers").

## Customer Relationships, Employee Interests, and Business Interests

14.     While employed by CDW, the Former CDW Coworkers and the Targeted CDW Coworkers had regular and extensive access to the following confidential and trade secret information belonging to CDW:

    a.     current and prospective customer lists and information;

    b.     partner information and pricing information;

    c.     current and prospective projects lists and information;

    d.     pricing and margin strategies;

    e.     shipping strategies;

    f.     sales methods, strategies and strategic partnerships;

    g.     vendor/partner and vendor/partner pricing and margin information;

    h.     cost, pricing, and estimating information;

    i.     growth strategies;

    j.     current and historical financial performance;

    k.     customer engineering designs and pricing strategies;

l.      maintenance pricing strategies;

m.      the integration and aggregation of customer and prospective client information;

n.      company pricing and estimating information;

o.      company strategies and methods;

p.      company financial information;

q.      engineered design plans;

r.      customer technological solution strategies; and

s.      statements of work;

15.     At all times relevant to this action, the Former CDW Coworkers were subject to employment agreements (attached hereto as Exhibits A through L) in which they agreed that it was their duty and obligation to preserve and protect CDW's confidential information and trade secrets during and after their employment.

16.     At all times relevant to this action, the Targeted CDW Coworkers were subject to employment agreements (a sample set attached hereto as Exhibit M) in which they agreed that it was their duty and obligation to preserve and protect CDW's confidential information and trade secrets during and after their employment.

17.     NETech was aware of the existence and substance of the employment agreements of the Former CDW Coworkers' and the Targeted CDW Coworkers.

18.     CDW has developed its confidential information and trade secrets over a significant period of time and at great expense.  This information is not known outside of CDW and is valuable because of its secrecy.

19.     CDW protects its confidential information and trade secrets with levels of secrecy sufficient for CDW to derive economic value from its non-disclosure to other persons or entities who would obtain economic value from the disclosure of the confidential information.  If

-6-

competitors, such as NETech, obtained CDW's trade secrets and other confidential information, they would be able to unfairly bid against CDW, who would then be deprived of the advantages from the secrecy of this information.

20.    CDW has protected the secrecy of its confidential information and trade secrets through several means, including but not limited to: (a) requiring employees to sign agreements containing confidentiality provisions; (b) discussing confidentiality policies with its employees at the time of hire; (c) requiring key employees, such as the Former CDW Coworkers and the Targeted CDW Coworkers, to sign post-employment restrictive covenants; (d) limiting access to confidential information and monitoring who is given access to such information; (e) password protecting all computers; (f) instructing personnel not to disclose confidential information to persons outside of CDW both during and after their employment; (g) prohibiting the disclosure of confidential information and trade secrets in employment policies; (h) requiring all confidentiality and proprietary materials to be returned whenever an employee terminates his or her employment; (i) requiring the execution of non-disclosure agreements prior to the distribution of relevant, limited information to it customers; (j) programming computer systems to lock automatically if they remain idle for more than a few minutes; (k) prohibiting the use of personal cameras at any time on CDW property; and (l) restricting employee access to corporate customers' account databases.

**CDW Coworkers' Access to Confidential Information and Trade Secrets**

21.    During the course of their employment with CDW, the Former CDW Coworkers and the Targeted CDW Coworkers were entrusted with and had access to a variety of confidential business information and trade secrets, including bills of materials, engineering designs, statements of work, service calculators, product cost information, sales and margin

-7-

information for each customer on each product, partner/vendor sales and margin information (such as Cisco), other cost information, customer sales history, customer price quotes, purchasing manners and methods, the identity and addresses of actual or potential customers, engineering and project information, supplier/vendor information, and financial data. CDW has invested millions of dollars in designing, developing, improving and protecting its confidential information and trade secrets.

22.     The Former CDW Coworkers and the Targeted CDW Coworkers managed all aspects of CDW's relationships with hundreds of customers and numerous key vendor partners like Cisco. In this capacity, many of the Former CDW Coworkers and the Targeted CDW Coworkers developed and designed complex technological solutions for CDW customers, devised pricing and margin strategies, negotiated sales, set prices, and had other responsibilities that required the use of CDW's confidential information and trade secrets. Because of their position, the Former CDW Coworkers and the Targeted CDW Coworkers were given access to customer account information that contained confidential business information and trade secrets, including product cost formula, sales and margin data, partner pricing and margins. This unique product cost formula and margin information is extremely sensitive confidential information and constitutes trade secrets. CDW's competitors could use this information to CDW's disadvantage if they had access to it because it is not disclosed to customers and is not known to others in the industry who could benefit by using it. Moreover, the Former CDW Coworkers and the Targeted CDW Coworkers were given access to the unique product cost formula and margin information for CDW's partners, which is also extremely sensitive confidential information. Cisco and CDW require that one another maintain the confidentiality of their pricing and margin

-8-

information.  This customer and partner information could not be acquired from customers or partners through general skills and knowledge.

23.     Similarly, the Former CDW Coworkers who worked as network engineers (such as Lochkovic, Walls, Netherland and Nammalwar) and the Targeted CDW Coworkers who worked as network engineers were responsible for designing, implementing, and servicing the network and infrastructure solutions sold by many of the Former CDW Coworkers identified above.  The Former CDW Coworkers and the Targeted CDW Coworkers who worked as network engineers were given access to and obtained extremely sensitive confidential information.  CDW's competitors could use this information to CDW's disadvantage if they had access to it because it is not disclosed to customers and is not known to others in the industry who could benefit by using it.

24.     Because the Former CDW Coworkers and the Targeted CDW Coworkers promised to protect and preserve confidential information and trade secrets, CDW entrusted this information to them with the explicit understanding that they would at all times keep it secret and use it only for the benefit of CDW.

**The Former and Targeted CDW Coworkers' Non-Solicitation Obligations**

25.     Under their employment agreements, most of the Former CDW Coworkers and the Targeted CDW Coworkers had contractual obligations not to solicit the CDW customers with whom they worked for either 6 or 12 months after they left CDW.  These employment agreements also prohibit these CDW coworkers from soliciting for hire any CDW coworkers for either 6 or12 months after they leave CDW's employment.

26.     At all relevant times, NETech has been aware of these non-solicitation obligations for both the Former CDW Coworkers and the Targeted CDW Coworkers.

43878-0071/LEGAL23807068.1

**NETech's Improper Solicitations, Trade Secret Misappropriation, and the Former CDW Coworkers' Mass Exodus to NETech's Indiana Office**

27.    Upon information and belief, NETech began soliciting the Former CDW Coworkers and the Targeted CDW Coworkers in the first quarter of 2010 to resign their employment with CDW and to work for NETech in Indiana and Wisconsin.  NETech encouraged these CDW coworkers to solicit one another and other CDW coworkers so that numerous CDW coworkers would leave together to join NETech.

28.    On February 28, 2010, Wierenga emailed Bobo's personal email account and informed him that "both [NETech's CEO] Jim [Engen] and I are really excited about Evansville and the opportunity in Southern Indiana.  We would like to set up a time for the entire team to meet us and ask us a few questions and get to know us better."  Wierenga later wrote to Bobo on March 2, 2010 that "both Jim and I are excited to meet with the engineers and sales teams in Evansville."

29.    NETech used Bannister, Bobo and Lochkovic to recruit CDW's Indiana sales employees and network engineers from CDW while still employed at CDW.

30.    On information and belief, Wierenga and Engen met with some of the Targeted Indiana CDW Workers in Evansville, Indiana on Saturday, March 13, 2010.

31.    Wierenga and Engen had several meetings with the Former CDW Coworkers in March 2010 in an attempt to lure them to NETech's Indiana office.

32.    While still employed by CDW, several Former CDW Coworkers, including Dinkins, Garcia, and Peterson, forwarded CDW confidential information and trade secrets to their personal email accounts.  Shortly before leaving CDW, Garcia also used an external hard drive and a flash drive to, upon information and belief, download CDW confidential information and trade secrets.  Sawa also used multiple USB devices near the time of her resignation in order

-10-

to, upon information and belief, download information stored on her CDW computer. Dinkins also used a USB device shortly before his departure.

33.     Upon information and belief, the Former CDW Coworkers and some of the Targeted CDW Coworkers disclosed and shared with NETech various CDW confidential information and trade secrets, such as engineering designs, bills of materials, statements of work, and CDW's proprietary services calculator, which contain product cost, pricing, margins, sales, engineering, product, and other confidential customer and partner information during NETech's solicitation of CDW's employees.

34.     Upon information and belief, NETech, specifically Engen and Wierenga, lured the Former CDW Coworkers and the Targeted CDW Coworkers to share and misappropriate CDW's confidential information and trade secret information by promising signing bonuses and attractive commissions if the Former CDW Coworkers and the Targeted CDW Coworkers brought CDW's customers to NETech.

35.     Upon information and belief, NETech reviewed and analyzed CDW's confidential information and trade secrets in determining the compensation and commission structure for the Former CDW Coworkers at NETech.

36.     Upon information and belief, NETech encouraged or directed Rick Dinkins, Ann Garcia, Nicole Sawa and other Former CDW Coworkers to use the confidential information and trade secret information they took from CDW to divert CDW sales and sales opportunities to NETech while still employed by CDW.

37.     Consistent with this scheme, NETech provided certain Former CDW Coworkers NETech email addresses prior to their CDW resignations.

-11-

38.     Rick Dinkins began working at NETech in its Carmel, Indiana office on or about March 9, 2010, ten days before his last day of employment at CDW on March 19, 2010.

39.     On March 11, 2010, Dinkins received his first NETech purchase order from CDW customer Redcats USA, L.P.

40.     On or before March 12, 2010, Dinkins registered rdinkins@netechcorp.com with CDW partner Cisco as his primary email address.

41.     From March 15, 2010 through March 17, 2010, Dinkins submitted qualification approval requests to Cisco on behalf of NETech for CDW customer Redcats USA, L.P.

42.     On March 19, 2010, Dinkins resigned from CDW and is now employed by NETech.

43.     On March 22, 2010, Peterson resigned from CDW and is now employed by NETech.

44.     On March 26, 2010, Garcia resigned from CDW and is now employed by NETech.

45.     On March 31 2010, Sawa resigned from CDW and is now employed by NETech.

46.     On April 1, 2010, Bannister resigned from CDW and is now employed by NETech.

47.     On April 7, 2010, Walls resigned from CDW and is now employed by NETech.

48.     On April 20, 2010, Lochkovic resigned from CDW and is now employed by NETech.

49.     On April 20, 2010, Netherland resigned from CDW and is now employed by NETech.

-12-

50.　　On May 7, 2010, Nammalwar resigned from CDW and is now employed by NETech.

51.　　To accommodate NETech's hiring of CDW's coworkers in Indiana, NETech executed a lease agreement in the summer of 2010 to obtain more office space in Carmel, Indiana.

52.　　Many of the Former CDW Coworkers, including Dinkins, Garcia, Peterson, Sawa, Lochkovic, Netherland, and Nammalwar resigned without returning all confidential information and trade secrets in their possession, including but not limited to, emails and attachments they sent to their personal email accounts and various electronic storage devices used, upon information and belief, to download CDW information.  Consequently, NETech now possesses and is using CDW's confidential information and trade secrets to solicit the CDW customers with whom the Former CDW Employees worked with while at CDW.

53.　　Upon information and belief, NETech induced and offered incentives, like signing bonuses and stock option agreements, to the Former CDW Coworkers and the Targeted CDW Coworkers to solicit the Targeted CDW Coworkers to leave CDW for NETech in violation of the employee non-solicitation obligations in the employment agreements.

**NETech's Raid on CDW's Wisconsin Offices**

54.　　In connection with NETech's aggressive recruiting efforts, in May 20, 2010, NETech's Human Resources representative, Shannon Ahola, personally called CDW coworkers at CDW's Wisconsin offices and solicited them to attend a NETech job fair at various Wisconsin locations.

55.　　Around this time, NETech began recruiting Michael Sanders, a former CDW Senior Director for Advanced Technologies, who was subject to a Class B Common Unit Grant Agreement with CDW (a true and correct copy of such agreement is attached hereto as Exhibit

-13-

I), which contains various restrictive covenants, including a 12-month employee non-solicitation provision.

56.    Upon information and belief, NETech through Engen and Wierenga recruited Sanders with the intention of Sanders opening NETech's Middleton, Wisconsin office and serving as that office's branch manager.

57.    After several meetings with him, NETech hired Sanders on or about July 19, 2010 to open NETech's Middleton, Wisconsin office.  Sanders became the branch manager of NETech's Middleton, Wisconsin office.

58.    Upon information and belief, with knowledge and disregard for CDW's contract rights under its various employee nonsolicitation agreements, Sanders has induced or attempted to induce many of the Targeted Wisconsin CDW Coworkers, to leave CDW and to join NETech's new office in Middleton, Wisconsin.

59.    Specifically, NETech has recently hired Former CDW Coworkers, Dan Ryan and Chris Jones, both of whom now work out of NETech's Middleton, Wisconsin office.

60.    To accommodate NETech's hiring of CDW's coworkers in Wisconsin, NETech executed a lease agreement in September, 2010 to obtain office space in Middleton, Wisconsin.

61.    Upon information and belief, NETech is currently recruiting some of the Targeted Wisconsin CDW Coworkers.

62.    Upon information and belief, NETech has offered employment to some of the Targeted Wisconsin CDW Coworkers.

63.    Upon information and belief, NETech has also targeted and recruited CDW coworkers in Grand Rapids, Michigan, including but not limited to Brian Donovan.

-14-

**The Former Coworkers and NETech's Solicitation of CDW's
Customers and Interference with its Vendor Relationships**

64.    After they resigned from CDW, NETech continued to direct and encourage certain Former CDW Coworkers to contact and solicit various CDW customers with whom they had contact with while employed by CDW, including without limitation, Firestone Diversified, Redcats USA, L.P., Steak-N-Shake, Baker and Daniels, LLP, Ortho Indy, City of Anderson, Indiana and ACES Power Marketing.

65.    In contacting and soliciting CDW customers, NETech used and misappropriated CDW confidential information and trade secrets.

66.    Upon information and belief, NETech has offered compensation and other financial incentives to the Former CDW Coworkers to solicit CDW customers to transfer their business from CDW to NETech.

67.    NETech was aware of the customer non-solicitation obligations in the Former CDW Coworkers' employment agreements.

68.    In encouraging or directing the Former CDW Coworkers to contact and solicit CDW's customers, NETech has willfully interfered with CDW's important relationships with these customers.  NETech also willfully interfered with CDW's important relationships with its vendors, including, but not limited to, Cisco by using and discussing confidential information on behalf of NETech.

69.    Upon information and belief, NETech and the Former CDW Coworkers have disparaged CDW and spread misinformation to CDW's customers and vendors such as Cisco.

## COUNT I

### Tortious Interference With Contractual Relationships
*(As to Contracts of CDW LLC, CDW Direct LLC,
and Berbee Information Networks Corporation)*

70.     CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 69 of the Amended Complaint.

71.     The Former CDW Coworkers were and are parties to employment agreements attached hereto.

72.     At all relevant times, NETech had knowledge of the employment agreements and the Former CDW Coworkers continuing obligations under such agreements.

73.     Without justification, NETech induced or otherwise encouraged, assisted and facilitated the Former CDW Coworkers in breaching their contractual confidentiality, customer non-solicitation, employee non-solicitation, and the return of confidential information obligations under the employment agreements.

74.     By its conduct, as alleged herein, NETech wrongfully interfered with CDW's contractual relationship with the Former CDW Coworkers.

75.     NETech's tortious interference with CDW's contractual relationship with the Former CDW Coworkers has caused, and unless enjoined, will continue to cause, substantial harm and irreparable injury for which CDW has no adequate remedy at law.

76.     NETech's conduct, as alleged herein, constitutes malicious, oppressive, willful and wanton tortious behavior in blatant and reckless disregard of CDW's rights, for which CDW should recover punitive damages in an amount sufficient to deter NETech and others similarly situated from engaging in future similar conduct.

43878-0071/LEGAL23807068.1

## COUNT II

### Tortious Interference With Business Relationships
*(As To Relations Between CDW LLC, CDW Direct LLC,*
*CDW Government LLC, Berbee Information Networks*
*Corporation and their Customers)*

77.    CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 76 of the Amended Complaint.

78.    CDW had valuable business relationships with its customers.

79.    At all relevant times, NETech had knowledge of CDW's valuable business relationships with its customers.

80.    Without justification, NETech intentionally, wrongfully and illegally interfered with CDW's valuable business relationships with its customers.

81.    In interfering with these relationships, NETech engaged in illegal conduct, including but not limited to the conversion of CDW information.

82.    CDW has suffered injuries as a direct and proximate result of NETech's tortious interference with CDW's business relationships with its customers.

83.    NETech's tortious interference with CDW's business relationships with its customers has caused, and unless enjoined, will continue to cause, substantial harm and irreparable injury for which CDW has no adequate remedy at law.

84.    NETech's conduct, as alleged herein, constitutes malicious, oppressive, willful and wanton tortious behavior in blatant and reckless disregard of CDW rights, for which CDW should recover punitive damages in an amount sufficient to deter NETech and others similarly situated from engaging in future similar conduct.

-17-

## COUNT III

### Tortious Interference With Employment
*(As To Relations Between CDW LLC, CDW Direct LLC,*
*Berbee Information Networks Corporation and their Coworkers)*

85.      CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 84 of the Amended Complaint.

86.      CDW had valuable relationships with its coworkers, including the Former CDW Coworkers and the Targeted CDW Coworkers.

87.      At all relevant times, NETech had knowledge of CDW's valuable relationships with its coworkers.

88.      Without justification, NETech intentionally, wrongfully and illegally interfered with CDW's valuable relationships with its coworkers.

89.      In interfering with these relationships, NETech engaged in illegal conduct, including but not limited to inducing and/or conspiring with some of the Former CDW Coworkers to convert CDW information, breach their fiduciary duties, and breach their contractual obligations.

90.      CDW has suffered injuries as a direct and proximate result of NETech's tortious interference with CDW's relationships with its coworkers

91.      NETech's tortious interference with CDW's employment relationships has caused, and unless enjoined, will continue to cause, substantial harm and irreparable injury for which CDW has no adequate remedy at law.

92.      NETech's conduct, as alleged herein, constitutes malicious, oppressive, willful and wanton tortious behavior in blatant and reckless disregard of CDW rights, for which CDW

should recover punitive damages in an amount sufficient to deter NETech and others similarly situated from engaging in future similar conduct.

## COUNT IV

### Misappropriation of Trade Secrets
*(Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 et seq.*
*as to CDW LLC, CDW Direct LLC, and Berbee Information Networks Corporation)*

93.    CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 92 of the Amended Complaint.

94.    The proprietary business and customer information that CDW entrusted to the Former CDW Coworkers constitutes trade secrets because CDW derives independent economic value from that information, such information is not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the information is the subject of reasonable efforts to maintain its secrecy.

95.    NETech acquired the trade secrets of CDW and knew and had reason to know that the trade secrets were acquired by improper means in violation of Indiana's Uniform Trade Secrets Act.

96.    NETech acquired and used the trade secrets of CDW without the express or implied consent of CDW in violation of Indiana's Uniform Trade Secrets Act.

97.    NETech has been unjustly enriched by its misappropriation of CDW's trade secrets.

98.    NETech's misappropriation of CDW's trade secrets has caused, and unless enjoined, will continue to cause, substantial harm and irreparable injury for which CDW has no adequate remedy at law.

-19-

99.     NETech's conduct, as alleged herein, constitutes willful and malicious misappropriation for which CDW should recover exemplary damages and attorneys' fees.

## COUNT V

### Conspiracy to Breach Fiduciary Duty
*(As to duties owed to CDW LLC, CDW Direct LLC, and Berbee Information Networks Corporation)*

100.    CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 99 of the Amended Complaint.

101.    By virtue of their positions at CDW, the Former CDW Coworkers stood in a fiduciary relationship with CDW.

102.    As fiduciaries, the Former CDW Coworkers were required to act with utmost good faith and fidelity toward CDW, and were prohibited from actively exploiting their positions within CDW for their own or other's benefit.

103.    The Former Coworkers breached their fiduciary duties to CDW by, among other things, working for NETech while still employed by CDW, using CDW's confidential information and trade secrets to the detriment of CDW and to the benefit of NETech, allowing CDW's confidential and trade secrets to be transmitted to NETech, and utilizing CDW's confidential information and trade secrets for personal gain and the benefit of NETech.

104.    NETech conspired with, and had a meeting of the minds with the Former CDW Coworkers, with the objective to improperly compete with CDW and/or facilitate the Former CDW Coworkers breach of their fiduciary duties to CDW.

105.    As a result, CDW has been injured and will continue to be damaged by the loss of customers, revenues, value of proprietary information, and/or goodwill.

-20-

## COUNT VI

### Common Law Unfair Competition
*(As To Competition with CDW LLC, CDW Direct LLC,*
*CDW Government LLC, and Berbee Information Networks Corporation)*

106.    CDW realleges and incorporates by reference the allegations contained in paragraphs 1 through 105 of the Amended Complaint.

107.    NETech undertook the foregoing acts to gain an unfair competitive advantage over CDW.

108.    NETech willfully undertook the foregoing acts with knowledge of and disregard for CDW's rights, and with the intention of causing harm to CDW and benefiting NETech.

109.    NETech is unfairly competing in the marketplace and/or took actions while using CDW's employees to unfairly compete with CDW.

110.    NETech's unfair competition has caused, and unless enjoined, will continue to cause, substantial harm and irreparable injury for which CDW has no adequate remedy at law.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully requests that the Court award CDW the following relief against NETech:

A.    Permanently enjoining, ordering, and restraining NETech:

1.    From discussing or using CDW's trade secrets, confidential information, and proprietary business information and documents;

2.    From unfairly competing with CDW in any manner whatsoever;

3.    From contacting or soliciting the CDW customers with whom the Former CDW Coworkers called on while at CDW for 12 months; and

4.    From soliciting or hiring any CDW coworkers nationwide for 12 months after any such employee terminates his or her employment with CDW.

-21-

B.      Ordering NETech to return all materials that relate to any of CDW's trade secrets, confidential information, and intellectual property;

C.      Awarding CDW compensatory damages;

D.      Awarding CDW punitive damages;

E.      Awarding CDW statutory damages;

F.      Award CDW its costs;

G.      Award CDW its reasonable attorneys' fees;

H.      Making this Court's July 7, 2010 Injunction Order permanent on a nationwide-basis; and

I.      Granting such other and further relief as may be just and proper.

Dated:  May 31, 2012                    PERKINS COIE LLP

                                        By: /s/ Craig T. Boggs
                                            Craig T. Boggs*
                                            Jeannil D. Boji*
                                            Brandy R. McMillion*
                                            Abiman Rajadurai*
                                            131 S. Dearborn, Suite 1700
                                            Chicago, Illinois 60603
                                            Telephone: 312-324-8400
                                            Facsimile: 312-324-9400
                                            cboggs@perkinscoie.com
                                            jboji@perkinscoie.com
                                            bmcmillion@perkinscoie.com
                                            arajadurai@perkinscoie.com

                                            *Admitted Pro Hac Vice

                                            FAEGRE BAKER DANIELS LLP
                                            David A. Given, #15749-49
                                            300 North Meridian Street
                                            Suite No. 2700
                                            Indianapolis, Indiana 46204
                                            Telephone: (317) 237-1000
                                            Facsimile: (317) 237-0300
                                            david.given@faegrebakerd.com

-22-

*Attorneys for Plaintiffs*

-23-

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 31st day of May, 2012, he caused a true and correct copy of **PLAINTIFF'S SECOND AMENDED COMPLAINT FOR PERMANENT INJUNCTIVE AND OTHER RELIEF** was filed electronically and notice of this filing will be sent to the parties listed below by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Donald E. Knebel
Dwight D. Lueck
Aaron M. Staser
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
dknebel@btlaw.com
dlueck@btlaw.com
astaser@btlaw.com


_/s/ Craig T. Boggs_____

-24-