UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CDW LLC, ) <br> CDW DIRECT LLC, ) <br> BERBEE INFORMATION NETWORKS ) <br> CORPORATION, ) <br> ) <br> Plaintiffs, ) <br> ) No. 1:10-cv-00530-SEB-DML <br> vs. ) <br> ) <br> NETECH CORPORATION, ) <br> ) <br> Defendant. ) | |

**ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S**

**ORDER ON DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY**

We have before us Plaintiffs' Objections to the Magistrate Judge's resolution of an issue relating to the scope and admissibility of an expert witness's anticipated trial testimony.  Dkt. No. 333.  For the reasons explicated below, we overrule Plaintiffs' objections on the grounds that the order is neither erroneous nor contrary to law, pursuant to 28 U.S.C. § 636(b)(1)(A).

Plaintiffs CDW LLC, CDW Direct LLC, and Berbee Information Networks Corporation (collectively, "CDW") brought this lawsuit nearly four years ago against Defendant NETech Corporation ("NETech") asserting claims of tortious interference, breach of fiduciary duties, misappropriation of trade secrets, and unfair competition.  Those claims, stemming as they do from events beginning in early 2010 when various CDW employees left that company to work for NETech, have been recounted by the Court in seemingly limitless contexts over the course of this protracted litigation.  See e.g., Dkt. Nos. 255, 329.

CDW has engaged Mr. Mark Hosfield, a financial consultant, Certified Public Accountant, and Certified Management Accountant focused on litigation and dispute analysis for clients across the country, to analyze CDW's damages, including future lost profits, based on NETech's allegedly tortious conduct. Mr. Hosfield reached the following conclusions (as distilled by the Magistrate Judge), based on the assumption that NETech is found liable to CDW:

> 1a. CDW suffered lost profits because of NETech's conduct of $4,960,859 through September 30, 2011;
>
> 1b. As an alternative measure of lost profits, NETech's sales to customers of the recruited CDW employees account for lost profit damages of $2,217,473 through September 30, 2011.
>
> 1c. CDW suffered future lost profit damages, made up of lost profits through 2015 and some indefinitely, in the amount of $13,804,701 (discounted to September 30, 2011).
>
> 1d. As an alternative measure of future lost profits, NETech's sales to customers of the recruited CDW employees account for future lost profit damages of $8,750,399.
>
> 2a. CDW incurred recruiting, training, and marketing expenses of $577,055 because of NETech's actions.
>
> 2b. CDW expended management time valued at $278,054 to control the damage to the business caused by NETech's actions.
>
> 2c. CDW paid increased compensation of $125,610 to certain individuals as a result of NETech's actions.
>
> 3. CDW paid $178,687 in compensation and expense reimbursements to employees not faithfully working for CDW because of NETech's actions.

Dkt. 329 at 4-5.

NETECH seeks to exclude portions of Mr. Hosfield's testimony based on Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Specifically, NETech challenges Mr. Hosfield's opinions in paragraphs 1a, 1b, 1c, and 1d, but does not seek to exclude his opinions in paragraphs 2a, 2b, 2c, or 3.

Federal Rule of Evidence 702 and Daubert require courts to determine whether expert testimony is relevant and reliable utilizing a three step analysis:

> the witness must be qualified "as an expert by knowledge, skill, experience, training, or education"; the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and the testimony must assist the trier of fact to understand the evidence or determine a fact in issue.

Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007) (quoting Fed. R. Evid. 702).

After careful review, the magistrate judge granted in part and denied in part NETech's motion to exclude. Dkt. No. 329. The magistrate judge first determined that Mr. Hosfield's compilation of revenue data from CDW's accounting system posed no admissibility problems because it was sufficiently verified by Mr. Hosfield. However, the magistrate judge concluded that Mr. Hosfield's lost profits calculations, based on an averaging of the revenue growth experiences of other CDW branches in the Great Lakes region, were not sufficiently reliable under Daubert and, thus, the opinions must be excluded based upon those calculations. This exclusion also applies to Mr. Hosfield's future lost profits calculation, which was based on the same methodology. The magistrate judge also specified that Mr. Hosfield's testimony regarding customer revenue generated by the efforts of former CDW employees during their employment at NETech must be excluded to the extent that Mr. Hosfield has included revenue attributable to customers of CDW-Government ("CDW-G"), which is not a party to this litigation and thus whose damages Plaintiffs cannot recover.[1] Finally, the magistrate judge agreed with NETech that Mr. Hosfield's customer-centric lost profits analysis which projects out to at least 2015 was too speculative because these assumptions do not comport with the reliability requirements under Daubert. CDW's objections to these rulings, filed pursuant to Federal Rule of Civil Procedure 72(a), are addressed below.

---

[1] Following the ruling by the magistrate judge, CDW-G filed a separate lawsuit against NETech. See Case No. 1:13-cv-00651-SEB-DML.

I.      Standard of Review

Federal Rule of Civil Procedure 72(a) directs as follows: "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." A showing of "clear error" means "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." ABN Amro Mortg. Group, Inc. v. Promised Landmortgage, LLC, No. 1:04-cv-956-SEB-JPG, 2007 U.S. Dist. LEXIS 49381 (S.D. Ind. July 6, 2007) (quoting Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997)). Having conducted that review, we find no error in the well-reasoned conclusions of the magistrate judge.

A.      **The Magistrate Judge Provided Adequate Reasoning For Her Conclusion that Mr. Hosfield's "Yardstick Methodology" Is Unreliable**

As noted above, the magistrate judge excluded Mr. Hosfield's lost profits determinations based on a comparison between the experiences of CDW's Indianapolis office with ten other CDW offices in the Great Lakes region. This "yardstick methodology" as utilized by Mr. Hosfield has been described as follows:

> In calculating lost future profits or lost business, the measure of damages is guided by analysis of "comparable businesses in the area." "The business used as a standard must be as nearly identical to the plaintiff's as possible." This is often referred to as the "yardstick approach." Absent the requisite showing of comparability, a damage model that predicts either the presence or absence of future profits is impermissibly speculative and conjectural.
>
> Of course, exact correlation is not necessary but the samples must be fair congeners. If they are not, the comparison is manifestly unreliable and cannot "'logically advance[] a material aspect of the proposing party's case. The Supreme Court [in Daubert] referred to this second prong of the analysis as the fit requirement.'"

Loeffel Steel Prods. v. Delta Brands, Inc., 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005) (citations omitted).

In determining that the other CDW offices in the Great Lakes region, i.e. the "yardsticks" used by Mr. Hosfield, were not sufficiently comparable, the magistrate judge noted that Mr. Hosfield failed to explain his choice of the other CDW offices as appropriate comparators to CDW's Indianapolis office. Specifically, by using the average revenue growth of the various offices as opposed to the actual experience of any single entity, the magistrate judge faulted Mr. Hosfield's failure to explain how any individual office could be appropriately compared to the office in Indianapolis. CDW's argument that the averaging of the offices was appropriate because of similarities between those offices was also rejected. Having determined that these similarities, i.e. the geographic location, line of business, and operation under the same management structure and policy, said nothing "about the market forces that affect (or affected) the revenues of any other branch and whether market forces affected Indianapolis even roughly the same as any other branch," the magistrate judge found them to be unpersuasive in calculating damages. Dkt. No. 329 at 14.

After considering CDW's objections, we are not convinced that the magistrate judge's conclusions were clearly erroneous or contrary to law. CDW's insistence that the regional offices are, indeed, comparable to its Indianapolis office, contrary to the magistrate judge's finding, is merely a reassertion of its losing argument to the magistrate judge. Dkt. No. 272 at 15-18. The magistrate judge's explanation that the wide variations in office performance as well as the lack of relevant similarities between the offices and the use of an average of these offices

undermines the methodology employed by Mr. Hosfield in coming to his conclusions is entirely sound.  Therefore, we will not overrule that conclusion.[2]

### B. The Magistrate Judge's Exclusion of Portions of Mr. Hosfield's Testimony Concerning Revenue Attributable to CDW-Government, i.e. its Healthcare Accounts, Is Well-Taken.

Mr. Hosfield advanced an alternative damages theory on behalf of CDW based on customer revenue generated by NETech employees who had been previously employed by CDW.  This computation assumes that but for NETech's wrongful conduct, those employees would have remained at CDW where they would have generated the same amount of revenue.  The magistrate judge ruled that when calculating the customer revenue generated by the efforts of former CDW employees while employed at NETech, Mr. Hosfield could not include revenue attributed to customers of CDW-G, a non-party.  The magistrate judge based her decision on the Court's previous finding that "a corporation does not 'have independent standing to sue for injuries done to a sister or subsidiary corporation, despite the fact that their businesses are intertwined and the success of one is dependent on that of the other.'"  Dkt. No. 255 citing Krier v. Vilione, 766 N.W. 2d 517, 525 (Wis. 2009).  We stand by that reasoning and its application by the magistrate judge in excluding Mr. Hosfield's testimony concerning lost profits attributable to customers of CDW-G.

### C. The Magistrate Judge's Exclusion of Mr. Hosfield's Testimony Regarding Future Lost Profits Is Sound.

The magistrate judge in agreeing with NETech that Mr. Hosfield's opinion regarding predicted future customer losses held that it was too speculative to satisfy the reliability requirements under Daubert.  Specifically, the magistrate judge found that Mr. Hosfield's

---

[2] CDW submitted a supplemental declaration by Mr. Hosfield in support of its argument that the other Midwestern offices are sufficiently comparable. However, we do not consider evidence that the parties failed to put before the magistrate judge in ruling on objections to the magistrate judge's ruling, pursuant to 28 U.S.C. § 636(b)(1)(A). Capstone Int'l, Inc. v. Univentures, Inc., No. 3:10-cv-416, 2011 U.S. Dist. LEXIS 129745, *7-8 (N.D. Ind. Nov. 8, 2011).

conclusion that future damages will be incurred by CDW was "based on the mere say-so of two CDW executives," whose opinions Mr. Hosfield accepted at face value.  In addition, the magistrate judge noted that Mr. Hosfield's opinion failed to take into account the injunction entered by this Court in July 2010.  These deficiencies rendered his opinion unreliable under Rule 702.

Having reviewed Mr. Hosfield's report, we find no clear error in the magistrate judge's determination that this proffered opinion is unreliable and thus properly excludable under Daubert.  CDW maintains that the extent to which Mr. Hosfield relied on the executives' opinion should be resolved by the jury at trial.  We concede that the line between testimony that is "unpersuasive" and that which is "unreliable" is a fine one.  Fail-Safe, L.L.C. v. A.O. Smith Corp., 744 F. Supp. 2d 870, 887 (E.D. Wis. 2010).  However, at the very least, "when an expert relies on information given to him by a party or counsel, he must independently verify that information."  King-Indiana Forge, Inc. v. Millennium Forge, Inc., 2009 U.S. Dist. LEXIS 96131, at *4 (S.D. Ind. Sept. 29, 2009).  The magistrate judge found that Mr. Hosfield did not conduct any such verification and, thus, this opinion is excludable pursuant to Daubert.[3]

## Conclusion

For the reasons detailed above, we hold that the conclusions reached by the magistrate judge are neither clearly erroneous nor contrary to law.  Thus, Plaintiffs' Objections are overruled.

IT IS SO ORDERED.

---

[3] Again, CDW attempts to rely on its supplemental declaration to establish that Mr. Hosfield did not rely solely on these predictions for his estimate of future lost profits but also relied on "his own experience, the data he analyzed, and the inferences he drew from that data."  CDW Reply at 5.  As noted above, we do not consider matters that the parties failed to put before the magistrate judge in reviewing the decisions of the magistrate judge, pursuant to 28 U.S.C. § 636(b)(1)(A).  Capstone Int'l, Inc. v. Univentures, Inc., No. 3:10-cv-416, 2011 U.S. Dist. LEXIS 129745, *7-8 (N.D. Ind. Nov. 8, 2011).

Date: 01/23/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Electronically registered counsel of record via ECF.